**S.S., Petitioner,**

**v.**

**The Honorable Dana WAKEFIELD, Judge of the Juvenile Court, In and For the City and County of Denver, State of Colorado, Respondent.**

**No. 88SA232.**

Supreme Court of Colorado, En Banc.

Nov. 14, 1988.

John E. Fitzgibbons, Denver, for petitioner.

Stephen H. Kaplan, City Atty., Claire A. Fish, Asst. City Atty., Denver, for respondent.

Allen B. Alderman, Denver, guardian ad litem.

QUINN, Chief Justice.

In this original proceeding we are asked to determine whether a judge of the Denver Juvenile Court should be disqualified from presiding over a dependency and neglect proceeding on the basis of bias or prejudice after initiating an *ex parte* communication with the respondent mother, S.S., for the purpose of informing her that her court-appointed attorney might not be providing her with effective representation. We issued a rule to show cause and now discharge the rule.

I.

S.S. was named as a respondent in a dependency proceeding filed after her child allegedly suffered a subdural hematoma. Because S.S. was financially unable to retain counsel, the court, pursuant to section 19–3–202, 8B C.R.S. (1988 Supp.),[1] appointed an attorney to represent her and set a trial date of June 20, 1988, for the adjudicatory phase of the case.[2]

On June 20, after all the interested parties announced their readiness for trial, S.S.'s attorney raised a pretrial matter with respect to his inability to obtain discovery of medical reports concerning the child. After some discussion the judge called the attorneys into chambers. The judge then expressed dissatisfaction over the fact that S.S.'s attorney had announced his readiness

for trial but yet had complained about his inability to secure important medical reports concerning the child. The judge questioned whether S.S. was receiving adequate legal representation. The case was then continued for trial on the following day.

On the following day the People moved for a continuance of the trial due to the illness of the attorney primarily responsible for the case. The judge granted the motion and set the trial for July 13, 1988. S.S.'s attorney then moved to dismiss the case on the basis that the court had failed to conduct a trial on the dependency petition within six months, citing section 19–3–505(5)(b), 8B C.R.S. (1988 Supp.),[3] in support of the motion. The judge denied the motion to dismiss, stating that section 19–3–505(5)(b) did not apply to the setting of a case for trial, as urged by S.S.'s attorney, but rather to postponement of the entry of an adjudicatory decree in cases where the court has made a finding at an adjudicatory hearing that the allegations of the petition have been established by a preponderance of the evidence.

The judge continued to have concerns about the adequacy of representation being provided by S.S.'s attorney and on June 29, 1988, decided to act on his concerns. It is the sequence of events of June 29 that formed the basis for S.S.'s motion for disqualification. We summarize those events from the affidavits of S.S., S.S.'s attorney, and the attorney's secretary, filed in support of the motion for disqualification.

1. Section 19–3–202(1), 8B C.R.S. (1988 Supp.), states that in a dependency proceeding a parent or legal custodian has the right to seek the appointment of counsel if financially unable to retain counsel.

2. In a dependency proceeding, the court first conducts an adjudicatory hearing, and if the allegations of dependency are sustained, a dispositional hearing may be held, § 19–3–505(7), 8B C.R.S. (1988 Supp.), which could ultimately result in the termination of the parent-child relationship, § 19–3–508(3), 8B C.R.S. (1988 Supp.).

3. Section 19–3–505(5), 8B C.R.S. (1988 Supp.), provides that the court, upon finding at an adjudicatory hearing that the allegations of a dependency petition are supported by a preponderance of evidence but before making an actu-

al adjudication of dependency, "may continue the hearing from time to time, allowing the child to remain in his own home" or in the temporary custody of another person if:

(a) Consent is given by the parties, including the child and his parent, guardian, or other legal custodian after being fully informed by the court of their rights in the proceeding, including their right to have an adjudication made either dismissing or sustaining the petition;

(b) Such continuation shall extend no longer than six months without review by the court. Upon review, the court may continue the case for an additional period not to exceed six months, after which the petition shall either be dismissed or sustained.

On June 29, 1988, the judge's clerk, acting at the direction of the judge, telephoned S.S. and asked her to meet with the judge on the next day without her attorney. S.S. called her attorney and told him of the clerk's message. The attorney told S.S. to cancel the meeting, which she did. The judge's clerk then called S.S. back to inform her that the judge said S.S.'s attorney could come to the meeting, whereupon S.S. agreed to attend the meeting.

Those present at the June 30 meeting were S.S., her attorney, a court reporter, and the judge. The judge stated that his reason for contacting S.S. was to express his concerns about the representation she was receiving and then explained:

> My plan was to talk to her alone so she'd feel free to be open with the Court about the selection of lawyers and then to contact you [the attorney] and let you know what the nature of the conversations was and give you an opportunity to respond. If you and she both prefer to be both present in the room, that's equally as agreeable with the Court.

After telling S.S. that important parental rights were at stake and that the court had a greater responsibility to her since her attorney had been court-appointed, the judge asked S.S. whether she wanted her attorney to continue to represent her or would like the court to appoint another attorney. The judge told S.S. that he had spoken to another attorney who could enter the case on short notice if S.S. so desired. S.S. declined the appointment of new counsel and stated that she wanted her present attorney to remain on the case.

On July 8, 1988, S.S. filed a motion for disqualification of the judge, supported by affidavits of herself, her attorney, and the attorney's secretary. The basis of the motion was that the judge's initiation of an *ex parte* communication was in violation of Canon 3 of the Colorado Code of Judicial Conduct, 7A C.R.S. (1973), and manifested

bias or prejudice on the part of the judge.[4] A hearing on the motion was set for July 12, 1988. On July 11, however, S.S. filed an original proceeding in this court in which she requested that the judge be required to show cause why he should not disqualify himself. We did not take immediate action on S.S.'s petition, and on the morning of July 12 the judge denied S.S.'s motion to disqualify. We thereafter acted on S.S.'s petition and issued a rule requiring the judge to show cause why he should not be disqualified from further proceedings in this case.

We now conclude that, although the judge's method of communicating to S.S. his concern about her attorney's representation was improper, the judge did not err in refusing to disqualify himself, because neither the motion to disqualify nor the supporting affidavits alleged sufficient facts from which it could reasonably be inferred that the judge had a personal bias or prejudice against S.S. or her court-appointed attorney.

## II.

A dependency proceeding is civil in nature, C.R.J.P. 1, and because there is no provision in the Colorado Children's Code or the Colorado Rules of Juvenile Procedure for disqualification of a judge, we may properly look to the Colorado Rules of Civil Procedure for the standards applicable to a motion for disqualification. *See, e.g., People in the Interest of M.M.*, 726 P.2d 1108, 1119 (Colo.1986). C.R.C.P. 97 states, in pertinent part, as follows:

> A judge shall be disqualified in an action in which he is interested or prejudiced ... or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or

---

**4.** In her motion to disqualify, S.S. cited Canon 3 A(4) and Canon 3 C(1). Canon 3 A(4) states that a judge should "neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding." Canon 3 C(1)(a) provides, in relevant part, that a judge

should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where the judge has a "personal bias or prejudice concerning a party."

any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit.

C.R.C.P. 97 in this respect echoes Canon 3 C(1)(a) of the Colorado Code of Judicial Conduct, which states that a judge should disqualify himself in any proceeding in which his impartiality may reasonably be questioned, including instances where "he has a personal bias or prejudice concerning a party."

■ The purpose of the disqualification requirement is to prevent a party from being forced to litigate before a judge with a "bent of mind." *Johnson v. District Court,* 674 P.2d 952, 956 (Colo.1984). While a judge may be convinced of his own impartiality, he nonetheless may so act as to lead a party to reasonably conclude that he is biased or prejudiced in the pending litigation. It is this appearance of bias or prejudice which undermines not only a litigant's confidence in the fairness of the proceeding but also public confidence in the integrity and impartiality of the judicial system. *Id.* The test for disqualification, therefore, is whether the motion and supporting affidavits allege sufficient facts from which it may reasonably be inferred that the judge is prejudiced or biased, or appears to be prejudiced or biased, against a party to the litigation. *Johnson,* 674 P.2d at 955–56; *see also Carr v. Barnes,* 196 Colo. 70, 72, 580 P.2d 803, 804 (1978); *People v. District Court,* 192 Colo. 503, 508–09, 560 P.2d 828, 832–33 (1977). Because a judge's bias or prejudice against an attorney can adversely affect the party represented by the attorney, disqualification should also be required when a judge so manifests an attitude of hostility or ill will toward an attorney that the judge's impartiality in the case can reasonably be questioned. *E.g., Hayslip v. Douglas,* 400 So. 2d 553 (Fla.Dist.Ct.App.1981); *Payne v. Lee,* 222 Minn. 269, 24 N.W.2d 259 (1946); *State ex rel. Oliver v. Crookham,* 302 Or. 533, 731 P.2d 1018 (1987); *State ex rel.*

*Piper & Wedge v. Crookham,* 302 Or. 549, 731 P.2d 1027 (1987); *see Rodriguez v. District Court,* 719 P.2d 699, 703 (Colo. 1986) ("motion and accompanying affidavits requesting disqualification ... must state facts from which it may be reasonably be inferred that the judge has a bias or prejudice with respect to the case, a party *or counsel*") (emphasis added).

In passing on the sufficiency of a motion for disqualification, the judge must accept the factual statements in the motion and affidavits as true, even if he believes them to be false or erroneous. *Wright v. District Court,* 731 P.2d 661, 664 (Colo.1987). The judge, in other words, must confine his analysis to the four corners of the motion and supporting affidavits, and then determine as a matter of law whether they allege legally sufficient facts for disqualification. A motion and supporting affidavits which merely allege opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, are not legally sufficient to require disqualification. *Carr,* 196 Colo. at 72, 580 P.2d at 804.

### III.

#### A.

■ S.S. argues that disqualification was required in this case because the judge initiated an *ex parte* communication with her in violation of Canon 3 A(4), which prohibits a judge from initiating *ex parte* communications concerning a pending proceeding, and that this *ex parte* communication created an appearance of impropriety in violation of Canon 2 of the Code of Judicial Conduct.[5] We find S.S.'s argument unpersuasive.

Although the judge's method of initiating an *ex parte* communication with S.S. concerning her attorney's ability to represent her was improper, this fact alone does not automatically demonstrate a basis for disqualification. What is required for disqual-

---

5. Canon 2 states that "[a] judge should avoid impropriety and the appearance of impropriety in all his activities." Section A of Canon 2 states that "[a] judge ... should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

ification is a factual averment sufficient to permit a reasonable inference that the *ex parte* communication demonstrated a real or apparent bent of mind adverse to S.S. or her attorney. In this case, the motion and affidavits fail to allege any facts from which it might reasonably be inferred that the *ex parte* communication demonstrated any bias or prejudice against S.S. or her attorney. Furthermore, nothing of record shows that any statements by the judge during the meeting on June 30, 1988, manifested an animus or bent of mind that would constitute grounds for disqualification. While we emphasize that a judge must avoid *ex parte* communications with parties and their attorneys concerning a pending proceeding, the bald assertion in an affidavit that the judge initiated an *ex parte* communication with a party, without any averment whatever as to how that communication manifested an actual or apparent bias or prejudice against the party or her attorney, is not sufficient to support a reasonable inference that the judge is prejudiced or appears to be prejudiced against the party or that party's attorney.

### B.

▉ S.S. also argues that the judge's belief that her attorney was not providing her with adequate representation demonstrated a sufficient showing of actual or apparent bias against S.S.'s attorney to require the judge's disqualification. We are not so persuaded.

Although the judge's bias or prejudice against an attorney representing a litigant may require disqualification, *see Rodriguez*, 719 P.2d 699; *Hayslip*, 400 So.2d 553; *Payne*, 222 Minn. 269, 24 N.W.2d 259; *Oliver*, 302 Or. 533, 731 P.2d 1018; *Piper*, 302 Or. 549, 731 P.2d 1027, there is nothing in this record to establish the necessary factual predicate for disqualification. It bears mention here that the dependency proceeding in this case could ultimately result in an order terminating the mother's parental rights or removing the mother as legal custodian of the child. *See* section 19–3–508(3), 8B C.R.S. (1988 Supp.). Since S.S.'s attorney was court-appointed, the judge,

especially in light of the seriousness of the proceeding, had an obligation to ensure that the mother would be receiving effective assistance of counsel. *See United States v. Rogers*, 471 F.Supp. 847 (E.D. N.Y.) (trial court's disqualification of defense attorney due to his lack of preparation upheld by appellate court), *aff'd sub nom. United States v. Raife*, 607 F.2d 1000 (2d Cir.1979) (decision without published opinion); *Baylor v. United States*, 360 A.2d 42 (D.C.1976) (trial judge's disqualification not required because judge was ensuring effective assistance of counsel by informing defense counsel that counsel was too inexperienced to try a first degree murder case), *cert. denied* 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 626 (1976). Although the judge should not have initiated an *ex parte* communication with S.S. for the purpose of communicating his concerns over the effectiveness of her court-appointed attorney, the record is barren of any facts from which it might reasonably be inferred that the judge harbored a personal bias, whether actual or apparent, against S.S.'s attorney.

In summary, the asserted impropriety of the judge's engaging in an *ex parte* communication with a party regarding the effectiveness of the party's court-appointed attorney is not an adequate substitute for a legally sufficient statement of facts regarding bias or prejudice. The rule to show cause is accordingly discharged.

VOLLACK, J. dissents.

LOHR, J., joins in the dissent.

VOLLACK, Justice, dissenting:

I respectfully dissent. I believe that Canon 2 of the Code of Judicial Conduct requires the judge to disqualify himself because of the extraordinary measures he took on June 29 and 30 to attempt to convince S.S. to dismiss her attorney.

Motions to disqualify a judge in a civil proceeding are governed by C.R.C.P. 97. The purpose of C.R.C.P. 97 is to ensure a fair and impartial hearing of the issues involved. *Wood Bros. Homes, Inc. v. City of Fort Collins*, 670 P.2d 9, 10 (Colo.App.

1983). "Moreover, not only the actuality of fairness must concern us, but the appearance of fairness as well." *People v. District Court,* 192 Colo. 503, 508, 560 P.2d 828, 831 (1977) (quoting *Berger v. United States,* 255 U.S. 22, 41, 41 S.Ct. 230, 235, 65 L.Ed. 481 (1921)); *accord Rodriguez v. District Court,* 719 P.2d 699, 703 (Colo.1986); *People v. Botham,* 629 P.2d 589, 595 (Colo. 1981); *cf.* § 16–6–201(1), 8A C.R.S. (1986); Crim.P. 21(b) (substantially identical to § 16–6–201(1)).[1]

Canon 2 of the Colorado Code of Judicial Conduct requires a judge to avoid impropriety and the appearance of impropriety. Section A of Canon 2 states: "A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." As the commentary to Canon 2 notes, irresponsible or improper conduct by the judge must be avoided because it erodes public confidence in the judiciary. *Cf.* ABA Standards for Criminal Justice 6–1.5 (2d ed. 1986).

Canon 3 can and should be read in conjunction with Canon 2 to require disqualification when a judge has failed to avoid the appearance of impropriety. Canon 3 C(1) states that a judge "should disqualify himself in a proceeding in which his impartiality might reasonably be questioned" in a number of situations which are not applicable here. The list, however, is illustrative only, and not limited to the situations described in subsection C(1). I believe the unusual facts of this case fall into this special category, and allow us reasonably to question the judge's impartiality.

I would hold that consideration of two facts alleged by S.S. in her motion to disqualify and accompanying affidavits, in addition to those stated by the majority, require disqualification because of the appearance of impropriety. First, the judge through his clerk told S.S. that the purpose of the June 30 meeting was to "render a decision" in her case. This statement misled S.S. to believe that the purpose of the meeting was to render a decision in her case rather than to ask her to consider a change of counsel. Second, the judge told S.S. at the June 30 meeting that he had previously spoken with another attorney who could enter the case on short notice if S.S. so desired. This statement, which was obviously made in order to pave the way for a change of counsel, placed significant judicial pressure on the mother to dismiss her attorney. I believe that these facts allow us reasonably to question his impartiality. Regardless of his good intentions, the judge's decision to abandon the detached status traditionally accorded the judiciary in order to advocate the position that S.S. ought to dismiss her attorney and select new counsel created the appearance of impropriety. As the Connecticut Court of Appeals stated in disqualifying a judge who engaged in *ex parte* communications with a witness for one of the litigants in a divorce proceeding:

The question presented here is not whether the judge could render an impartial decision, but whether her ex parte discussion with the witness immediately following his testimony created in the minds of observers, particularly the defendant, an appearance of impropriety. We believe that, regardless of the judge's intent, her action created the appearance of impropriety. "Proof of actual bias is not required for disqualification. The appearance as well as the actuality of impartiality on the part of the trier is an essential ingredient of a fair trial." We have embraced the rule that "justice must satisfy the appearance of justice[,]" even though this "stringent rule may sometimes bar trial by judges who have no actual bias and who would

---

**1.** The instruction provided by criminal cases dealing with disqualification pursuant to Crim. P. 21(b) applies to civil cases dealing with disqualification pursuant to C.R.C.P. 97, even though the disqualification procedures differ. *See Johnson v. District Court,* 674 P.2d 952, 956 n. 2 (Colo.1984). Despite these procedural differences, Crim.P. 21(b) has uniformly been applied in disqualification cases. *People v. District Court,* 192 Colo. 503, 506, 560 P.2d 828, 830 (1977); *Golden v. District Court,* 186 Colo. 300, 301, 527 P.2d 60, 61 (1974); *Austin v. Denver,* 170 Colo. 448, 457, 462 P.2d 600, 605 (1970).

do their very best to weigh the scales of justice equally between contending parties."

Although in this case there has been no showing of actual bias on the part of the trial judge, which fact the defendant conceded at oral argument, the facts and circumstances here reasonably implicate the appearance of impropriety. The trial court erred in failing to grant the defendant's motion for a mistrial.

*Dubaldo v. Dubaldo,* 14 Conn.App. 645, 752, 542 A.2d 750, 752 (1988) (footnote & citations omitted).

I agree with the majority that one function of the trial judge in a dependency proceeding is to guarantee that an indigent parent receives the effective assistance of counsel from her court-appointed attorney. That function can be performed, however, without engaging in *ex parte* communications and without placing unfair pressure on the indigent parent to dismiss her attorney.

I believe it is not enough to disapprove of the judge's actions. For the reasons stated, I believe the rule to show cause should be made absolute.

I am authorized to say that Justice LOHR joins in this dissent.

