Ruth GOEBEL, Kathy Edmiston, George Wooten, Lee A. Williams, Jr., Laura Munson, and All Other Similarly Situated Persons, Petitioners,

v.

Judge Field BENTON, Probate Court Judge sitting as a District Court Judge for the City and County of Denver, Respondent.

No. 91SA370.

Supreme Court of Colorado,
En Banc.

May 26, 1992.

Law Office of Kathleen Mullen, P.C., Kathleen Mullen, Denver, Colorado Lawyers Committee, Pryor, Carney & Johnson, P.C., Rodney R. Patula, Englewood, and Legal Aid Soc. of Metropolitan Denver, Inc., James W. Dean, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Diane E. Eret, First Asst. Atty. Gen., and David C. Feola, Asst. Atty. Gen., Denver, for respondent.

Margery T. Bornstein, Sp. Asst. Atty. Gen., Denver, for State defendants.

Daniel E. Muse, City Atty., R.W. Hibbard III, Morris F. Evans, and Niels Loechell, Asst. City Attys., Denver, for Mun. defendants.

Justice ERICKSON delivered the Opinion of the Court.

Pursuant to C.A.R. 21, the petitioners filed this mandamus proceeding to compel the respondent, Judge Field Benton, to disqualify himself. We issued a rule to show cause and now make the rule absolute.

I

In 1981, the petitioners, Ruth Goebel and other low income mentally ill residents of the City and County of Denver, commenced a class action against the City and County of Denver, the Denver City Council, the Mayor, the Director of the Department of Health and Hospitals, and the Director of the Department of Health and Hospitals Mental Health Program (municipal defendants) and the Colorado Department of Institutions and its Director (state defendants). The action challenged "the adequacy of the mental health care provided to [petitioners] by the Colorado Department of Institutions and the Denver Department of Health and Hospitals" and sought both declaratory and injunctive relief. Judge Field Benton, the Denver Probate Judge, was designated by the Chief Judge of the Denver District Court to hear the case as a judge of the Denver District Court. We first reviewed this case in *Goebel v. Colorado Department of Institutions,* 764 P.2d 785 (Colo.1988), after Judge Benton dismissed all of the petitioners' claims. We reversed the dismissal and remanded the case to the district court for further proceeding and the case is again before us for review. *Goebel v. Colorado Dep't of Institutions,* 830 P.2d 1036 (Colo.1992).

On July 21, 1991, petitioners filed a motion to recuse the respondent judge, pursuant to C.R.C.P. 97, supported by two affidavits that allege that the respondent judge was biased or prejudiced or gave "the appearance of impropriety and prejudice against the plaintiff class." Petitioners' motion for disqualification is based on *ex parte* communications between Judge Benton and a witness in the *Goebel* case, delay in deciding critical issues, and certain rulings by the respondent judge. The state defendants in the original action also filed a motion to recuse based on the *ex parte* communications asserted by the petitioners. The state defendants, in their motion to disqualify, claimed that the judge compromised the appearance if not the reality of impartiality and demonstrated a bent of mind that will prevent him from dealing fairly with the state defendants. The municipal defendants filed a response to the motions but did not join in the motion for disqualification.

The petitioners' motion for recusal and the supporting affidavits allege that on June 6, 1991, James W. Dean, an attorney for petitioners, was informed of an *ex parte* lunch meeting that had taken place between Judge Benton, Sheila Baler, Executive Director of the Mental Health Corporation of Denver (MHCD), and two counsel for MHCD. MHCD had been a party to this action, but was dismissed. The petitioners contend that MHCD was "in effect" a successor to Denver in the case before Judge Benton and that Baler "was a key witness called by the State to testify regarding the sufficiency of resources outlined in the State's remedial plan" and a likely witness in future proceedings. A letter from MHCD's counsel to counsel for the state defendants and counsel for the petitioners was attached to an affidavit supporting the motion to disqualify. The letter stated that the meeting was held prior to MHCD's circulation of a press release "to inform [Judge Benton] of MHCD's intention to reduce services." Petitioners contend that the reduction in services was directly relevant to the issues pending before Judge Benton.

Judge Benton's bias was allegedly "reflected by his delay and inaction in this case." In his affidavit Dean stated that he attended a status conference where Judge Benton said that he had not issued a decision after a three-week trial in part be-

cause his long-time friend, Dr. Frank Traylor, a named defendant and Director of the Department of Institutions, had indicated that he thought a settlement of the case was likely.

The motion to disqualify and Dean's affidavit set forth that Judge Benton had made a number of rulings that were adverse to the petitioners, that he had unreasonably delayed making a decision, that he declined to require the court reporter to expedite preparation of a transcript of the trial court proceedings that Dean requested, and that he made rulings based on his own social philosophy. It is alleged in the disqualification motion that the respondent judge made several, on the record, derogatory references to the petitioners and their counsel. Dean stated in his affidavit that Judge Benton, on several occasions, told counsel not to expect much of a remedial plan since plaintiffs are indigent, there are many competing demands for public funds, and taxpayers cannot afford to pay for new programs.

Judge Benton denied the motions to recuse, concluding that petitioners did not know why the meeting was held or what actually transpired during the meeting. He stated that although Baler had previously testified concerning the remedial plan, neither Baler nor other MHCD representatives are, "so far as the court knows," witnesses in any pending matter. The denial of the recusal motions resulted in this original proceeding.

## II

C.R.C.P. 97 governs the disqualification of a judge in civil cases:

A judge shall be disqualified in an action in which he is interested or prejudiced ... or is so related or connected with any party ... as to render it improper for him to sit on the trial ... or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit.[1]

■ We recognized in *Johnson v. District Court*, 674 P.2d 952, 956 (Colo.1984), that the purpose of the disqualification requirement is to prevent a party from being forced to litigate a matter before a judge with a "bent of mind." *See also S.S. v. Wakefield*, 764 P.2d 70, 73 (Colo.1988). In *Johnson* we said:

Ordinarily, the question of whether a judge should be disqualified in a civil case is a matter within the discretion of the trial court. *In re Marriage of Mann*, 655 P.2d 814 (Colo.1982). However, where an attorney for one of the litigants signs a verified affidavit alleging conduct and statements on the part of the trial judge which, if true, show bias or prejudice or the appearance of bias or prejudice on the part of the trial judge, it is an abuse of discretion if that judge does not withdraw from the case, even though he or she believes the statements are false or that the meaning attributed to them by the party seeking recusal is erroneous. In such a case, the judge should not pass upon the truth or falsity of the facts alleged in the affidavit, but only upon the adequacy of the motion as a matter of law. "The motion and supporting affidavit speak for them-

---

**1.** It is also alleged that Judge Benton violated Canons 2, 3 A(4), and 3 A(5) of the Colorado Code of Judicial Conduct, 7 A C.R.S. (1990), which provide in relevant part:

Canon 2:

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. ... A judge should not lend the prestige of his or her office to advance the private interests of others; nor should a judge convey or permit others to convey the impression

that they are in a special position to influence him or her.

Canon 3 A(4):

A judge should accord to every person who is legally interested in a proceeding, or his or her lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding....

Canon 3 A(5):

A judge should dispose promptly of the business of the court.

selves and the only question involved is whether the facts alleged are sufficient to compel the judge to disqualify himself." *Kovacheff v. Langhart,* 147 Colo. 339, 343–44, 363 P.2d 702, 705 (1961). The motion and affidavits are legally adequate if they "state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent him from dealing fairly" with the party seeking recusal. *People v. Botham,* 629 P.2d 589, 595 (Colo.1981). 674 P.2d at 955–56. "A motion and supporting affidavits which merely allege opinions or conclusions, unsubstantiated by facts supporting a reasonable inference of actual or apparent bias or prejudice, are not legally sufficient to require disqualification." *Wakefield,* 764 P.2d at 73. However, if the motion and supporting affidavits allege facts which demonstrate that the respondent judge had a "bent of mind," the judge's refusal to recuse or disqualify himself is an abuse of discretion. *See Johnson,* 674 P.2d at 956. Thus, it is not the prerogative of the trial judge to pass upon the truth or falsity of the sworn statements, but rather it is the judge's duty only to pass upon the legal sufficiency of the factual averments in the affidavit.

## III

■ The motion and supporting affidavits filed by the petitioners were sufficient to require disqualification. In *Johnson v. District Court,* the plaintiff filed a motion to disqualify the trial judge during the course of litigation between Johnson and the Board of County Commissioners of Jefferson County. Johnson's disqualification motion was predicated on comments made by the trial judge immediately prior to a status conference following an appeal to this court and remand to the district court with directions. *See Johnson v. Jefferson County Bd. of Health,* 662 P.2d 463 (Colo. 1983). An affidavit in support of Johnson's motion for disqualification alleged that the judge stated that he had talked to the defendant's attorney about settling the case, that the judge stated that he "could make a settlement happen," and that the judge expressed the opinion that "it would not be good for … Johnson to get his job back. In fact it would be a disaster." *Johnson v. District Court,* 674 P.2d at 954. In his order denying Johnson's motion, the judge denied making one of the statements and stated that others were taken out of context. We held that the facts alleged by Johnson "if true, evidence partiality or the appearance of bias or prejudice against the petitioner" and were, therefore, legally adequate to require disqualification of the judge. *Id.* at 956.

■ Even though Judge Benton may be convinced of his own impartiality, disqualification is required under *Johnson* if the factual statements in the affidavits establish that the judge's actions or comments have compromised the appearance of fairness and impartiality such that the parties or the public are left with a substantial doubt as to the ability of the judge to fairly and impartially resolve pending litigation. The respondent judge relies on our decision in *Wakefield* to support his conclusion that the *ex parte* luncheon was not sufficient to require disqualification. There we held that the judge's initiation of an *ex parte* communication with the petitioner was not sufficient to show bias or prejudice or to require disqualification. *Wakefield,* 764 P.2d at 73. *Wakefield,* however, is factually distinguishable in that the judge initiated *ex parte* contact with the mother in a dependency and neglect proceeding to ensure the adequacy of representation she was receiving from her court-appointed attorney. We disapproved of the judge's initiation of *ex parte* communication without the mother's attorney present, but stated that additional facts must be alleged "from which it could reasonably be inferred that the judge had a personal bias or prejudice against" the petitioner. *Id.* at 72. We concluded that "the asserted impropriety of the judge's engaging in an *ex parte* communication with a party regarding the effectiveness of the party's court-appointed attorney is not an adequate substitute for legally sufficient statements or facts regarding bias or prejudice." *Id.* at 74.

While it is inappropriate for a judge to initiate an *ex parte* communication concerning a pending proceeding with an interested party, C.J.C. Canon 3(A)(4), not all *ex parte* communications are *per se* grounds for disqualification. The critical test under *Wakefield* is whether the affidavits in support of the motion for disqualification, along with any other matters of record, establish facts from which it may reasonably be inferred that the judge is prejudiced or biased, or appears to be prejudiced or biased, in favor of or against a party to the litigation.

In contrast to *Wakefield*, in which the judge's *ex parte* communication with the respondent mother was prompted by a misguided effort to ensure fairness to the mother, the affidavits here establish that Judge Benton's *ex parte* meeting with MHCD's executive director and its attorneys related directly to MHCD's ability to provide services to the mentally ill, an issue of critical significance to the respondent judge's ultimate ruling on the adequacy of the state's remedial plan.

Petitioners further assert Judge Benton's delay and unfavorable rulings as bases for disqualification. A ruling by a judge on a legal issue does not require disqualification absent facts in the motion or affidavits from which it may reasonably be inferred that the judge is biased or prejudiced or has a bent of mind. *See Brewster v. District Court*, 811 P.2d 812, 814 (Colo.1991) (motion to recuse based on Crim.P. 21(b)(3)). However, considered in their totality, petitioners' affidavits are sufficient to show that the judge demonstrated "bent of mind" and require disqualification in order to ensure fairness and impartiality to all the litigants in the case.

## IV

Petitioners also contend in this original proceeding that constitutional issues in this case are ripe for review by this court because of the General Assembly's refusal "to redress the pervasive violations of petitioners' rights under" the Act for Colorado's care and treatment of the mentally ill. §§ 27–10–101 to 27–10–129, 11B C.R.S.

(1989 & 1991 Supp.). We decline to review the constitutional issues at this stage of the proceedings.

## V

In our view, Judge Benton erred in declining to recuse himself because the allegations contained in petitioners' motion and the supporting affidavits are sufficient as a matter of law to require disqualification.

Accordingly, the rule to show cause is made absolute and the case is remanded to the district court with directions for the respondent judge to recuse himself in this case.

VOLLACK, J., does not participate.