Terry N. WILKERSON, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF EL PASO, State of Colorado, and the Honorable Richard Toth, one of the Judges Thereof, Respondents.

No. 96SA182.

Supreme Court of Colorado,
En Banc.

Oct. 15, 1996.

David F. Vela, Colorado State Public Defender, Eydie Bratfisch, Deputy State Public Defender, Andrea Head, Deputy State Public Defender, Colorado Springs, for Petitioner.

John Suthers, District Attorney, Fourth Judicial District, David Gilbert, Deputy District Attorney, Colorado Springs, for Respondents.

Justice KIRSHBAUM delivered the Opinion of the Court.

Petitioner Terry N. Wilkerson (Wilkerson), the defendant in a criminal case,[1] initiated this original proceeding pursuant to Rule 21 of the Colorado Rules of Appellate Procedure to obtain relief from an order entered by the respondent, the District Court for the Fourth Judicial District of the State of Colorado, denying Wilkerson's motion to recuse the trial court judge. Having issued a rule to show cause why the relief requested should not be granted, we discharge the rule.[2]

I

On March 14, 1996, during a preliminary hearing Wilkerson suffered two seizures in the courtroom. The hearing was immediately suspended and commenced again on March 27, 1996. On that date, during the testimony of an alleged victim of one of the offenses with which Wilkerson was charged, Wilkerson again suffered seizures in the courtroom.

On April 8, 1996, Wilkerson filed a motion together with three supporting affidavits requesting recusal of the trial judge, pursuant to Rule 21(b) of the Colorado Rules of Criminal Procedure.[3] The motion generally summarizes the contents of the affidavits. Two of the affidavits were executed by attorneys representing Wilkerson. Those affidavits contain statements to the effect that on April 1, 1996, the trial judge had a conversation with the two attorneys during which the trial judge stated that he had received information that Wilkerson did not suffer from epilepsy;[4] that at some time during the preliminary hearing proceedings a victim-witness coordinator from the district attorney's office had approached the trial judge outside the presence of defense counsel and informed the trial judge that one alleged victim was having difficulty testifying, did not wish to testify again, and because of her fear of testifying had difficulty sleeping and cried at night; and that based on this information, the trial judge would require Wilkerson and his attorneys to participate in the next preliminary hearing from the jail by means of a video camera. One of the defense attorneys averred that when she stated that she would object to any such procedure, the trial judge responded that the procedure would be utilized anyway, that the procedure would reduce stress on both Wilkerson and the victim, that the trial judge wished to get the case moving, and that the judge had to be concerned for the victim's feelings.

An investigator for Wilkerson also signed an affidavit describing a conversation between himself and the same victim-witness

---

1. The record does not reflect the nature of the offenses with which Wilkerson was charged.

2. Wilkerson also filed a motion to disqualify the district attorney's office and to strike the respondents' answer brief. That motion has been denied.

3. Crim. P. 21(b)(1)(IV) provides that a motion for substitution may be based on the ground that "[t]he judge is in any way interested or prejudiced with respect to the case, the parties, or counsel." Crim. P. 21(b)(3) provides in pertinent provision that "[i]f the motion and supporting affidavits state facts showing grounds for disqualification, the judge shall immediately enter an order disqualifying himself or herself."

4. Wilkerson represents in his brief that he suffers from epilepsy; however, the record before us contains no information respecting his medical condition. The affidavits also alleged that members of the trial judge's staff indicated that they had heard information regarding Wilkerson's "medical status" since the seizure occurring on March 27, 1996.

coordinator. The investigator averred that the coordinator stated that she had asked the trial judge whether the preliminary hearing could be held in another forum or conducted in a different manner and that she had informed the judge that the courtroom was an unsafe place for Wilkerson to have seizures, that one victim was very upset, and that Wilkerson's seizures made that victim more upset and caused her to lose sleep. The investigator further averred that the coordinator stated that she had discussed with the trial judge the possibility of using video cameras in order to keep Wilkerson in a more controlled environment in the event of another seizure and had suggested that "the courtroom at CJC could be modified for Mr. Wilkerson specifically for a seizure."

After conducting a hearing on the motion to recuse on April 8, 1996, the trial judge denied the motion. In so doing, the judge made the following comments:

> Well, I can't see anything in the affidavits or the motion that indicates that I'm in a mind set against [Wilkerson]. Everything I have said or done in this case has been to the contrary; it's been to his benefit. . . .

> [Wilkerson] has had the most violent seizures I've ever seen in my life. And I do believe they are seizures. I have overheard somebody saying they didn't think they were epileptic seizures; that doesn't matter to me. They are clearly, from what I can tell, worse than any epileptic seizures that I've ever seen.

> My goal has been to try to get him through this hearing with the least amount of physical impairment to him, and mental impairment.

> It's also my duty to see to it that the witnesses are not unduly abused in this system. And I don't see anything that is in here that says I can't be fair or wouldn't be fair.

> And I assume the law requires that, and I assume all of these statements are true. And I think they are true, but my goal is to give him the best and fairest trial he can get.

The parties then presented arguments concerning the manner in which the preliminary hearing should be conducted. Wilkerson asserted that he suffered further injury when "in this court and subjected to court proceedings." The trial judge responded that he believed that the video procedure would reduce Wilkerson's stress. Wilkerson also stated that he should not be subjected to unnecessary physical trauma. The trial judge then stated, "That's why I suggested . . . the television advisement forum. It was just a suggestion." At the conclusion of the hearing, the trial judge stated that in view of Wilkerson's arguments the video procedure would not be utilized at that time but that the judge perceived that procedure "to be best for [Wilkerson]." The trial judge also invited additional argument on the constitutionality of the proposed procedure, and on April 25, 1996, the parties presented additional arguments on that issue. At the conclusion of the hearing the trial judge ordered the parties to submit briefs on the issue.[5]

## II

Wilkerson argues that the motion to recuse and its accompanying affidavits establish facts that compelled the trial judge to grant the recusal motion in this case. We disagree.

## A

Parties to a criminal proceeding may file a motion with supporting affidavits to disqualify a judge if, *inter alia,* the judge is "in any way interested or prejudiced with respect to the case, the parties, or counsel." § 16–6–201(1)(d), 8A C.R.S. (1986); Crim. P. 21(b)(1)(IV). In other words, a party may seek recusal of a judge in order to prevent being compelled to litigate "before a judge with a bent of mind." *Brewster v. District Court,* 811 P.2d 812, 814 (Colo.1991).

---

5. In the brief filed here the respondents indicate that Wilkerson did file a brief with the trial judge regarding the propriety of the video procedure. In addition, Wilkerson suggests that the preliminary hearing was scheduled to occur on May 23, 1996. The record before us does not indicate whether the hearing occurred or whether the video procedure was utilized.

A motion for recusal and its accompanying affidavits are legally sufficient if, considered together, they " 'state facts from which it may reasonably be inferred that the respondent judge has a bias or prejudice that will in all probability prevent him or her from dealing fairly with a party.' " *People v. District Court,* 898 P.2d 1058, 1061 (Colo. 1995) (quoting *People v. Hrapski,* 718 P.2d 1050, 1054 (Colo.1986)); *Smith v. District Court,* 629 P.2d 1055, 1056 (Colo.1981). In determining whether a motion for recusal is legally sufficient, a trial judge may consider only the verified motion and supporting affidavits and must accept the facts contained in those documents as true. *People v. Botham,* 629 P.2d 589, 595 (Colo.1981). In addition, in assessing the sufficiency of the motion and affidavits the judge must consider not only the reality but also the appearance of bias, for the integrity of the judicial process is impaired when the public perceives partiality on the part of a judge. *Id.; People v. District Court,* 192 Colo. 503, 508, 560 P.2d 828, 833 (1977).

If the motion and supporting affidavits state facts establishing grounds for recusal, the judge has no discretion but must immediately disqualify himself or herself. Crim. P. 21(b)(3); *People v. District Court,* 898 P.2d at 1061; *People v. District Court,* 192 Colo. at 510, 560 P.2d at 833. Unless a reasonable person could infer from the facts that the judge would in all probability be prejudiced against the party, the judge must preside over the case. *Smith,* 629 P.2d at 1056. A trial judge's decision regarding the legal sufficiency of a motion for recusal and accompanying affidavits is a question of law, *Carr v. Barnes,* 196 Colo. 70, 72, 580 P.2d 803, 804 (1978), and is therefore subject to our independent review, *Smith,* 629 P.2d at 1056.

### B

Wilkerson argues that the trial judge's actual or apparent bias against him is established by the fact that the trial judge received ex parte information from an individual associated with the district attorney's office and "ordered" a video-based preliminary hearing as a result of this ex parte communication. The motion and affidavits do not establish that the trial judge ordered any video-based proceeding. Furthermore, we conclude that the motion and affidavits do not establish either the reality or the appearance of partiality.

In *S.S. v. Wakefield,* 764 P.2d 70 (Colo. 1988), we considered a similar question of whether a motion and affidavits alleging improper trial judge ex parte communications established grounds for disqualification. In *Wakefield,* the petitioner's motion for disqualification of the trial judge was accompanied by affidavits executed by herself, by her attorney, and by her attorney's secretary. *Id.* at 72. The motion was based on the trial judge's initiation of an ex parte meeting with the petitioner. *Id.* The trial judge apparently initiated the meeting out of concern that the petitioner, who was the respondent in a dependency proceeding, was not receiving effective representation from her court-appointed attorney. *Id.* at 71. The affidavits indicated that the trial judge's clerk, at the direction of the trial judge, telephoned the petitioner and asked her to meet with the trial judge without her attorney. *Id.* at 72. The petitioner notified her attorney of the telephone call and then cancelled the meeting at her attorney's direction. *Id.* The trial judge's clerk then telephoned the petitioner and rescheduled the meeting, stating that the petitioner's attorney could attend. *Id.*

At that meeting, the trial judge stated that he contacted the petitioner because he was concerned about the representation she was receiving. *Id.* He stated that he planned to speak with the petitioner alone so that she would feel comfortable speaking openly about her attorney, to then notify the petitioner's attorney of the nature of their conversation, and to provide the petitioner's attorney with the opportunity to respond. *Id.* The trial judge noted that important issues regarding parental rights were at stake and stated that because the petitioner's attorney was court-appointed, the trial judge had a greater responsibility to the petitioner. *Id.* The trial judge then asked the petitioner whether she desired the trial judge to appoint a new attorney and stated that he had spoken to another attorney who was able to assume

responsibility for the case on short notice. *Id.* The petitioner stated that she did not wish to be represented by new counsel and that she wanted her present attorney to continue to represent her. *Id.*

We determined in *Wakefield* that the trial judge's initiation of ex parte communications with the petitioner was improper but did not establish a basis for disqualification of the trial judge. *Id.* at 73. We concluded that the motion and affidavits alleged no facts "from which it might reasonably be inferred that the ex parte communication demonstrated any bias or prejudice against [the petitioner] or her attorney" and that no comments made by the trial judge during the meeting suggested "an animus or bent of mind" constituting grounds for recusal. *Id.* at 74. We also rejected the petitioner's argument that the trial judge's concern that her attorney was not adequately representing her established actual or apparent bias against her attorney. *Id.*

We similarly conclude here that while the trial judge's involvement in ex parte communications was highly improper, the motion and affidavits do not allege facts from which any actual or apparent animus or bias against Wilkerson can reasonably be inferred. The trial judge here did not initiate the conversation with the victim-witness coordinator. The coordinator told Wilkerson's investigator that the coordinator had expressed concern to the trial judge about Wilkerson as well as about an alleged victim. The affidavits establish that the trial judge was concerned for Wilkerson's welfare and stated that the proposed video procedure would reduce stress on both Wilkerson and the alleged victim.

 The trial judge's concern for the victim, like the trial judge's concern for the petitioner in *Wakefield,* does not in itself establish the reality or the appearance of partiality. In other contexts we have recognized a policy of "protecting certain wit-

nesses … from the sometimes traumatizing effect of facing their abusers openly in court." *People v. Diefenderfer,* 784 P.2d 741, 753 (Colo.1989) (analyzing statutory hearsay exception for statements of child victim of sexual assault or child abuse); *see Merritt v. People,* 842 P.2d 162, 166 (Colo.1992) (court may limit cross-examination of witness if necessary to protect personal safety of witness). Furthermore, while we make no observations regarding the propriety of the proposed video procedure, we note that trial judges enjoy broad discretion to adopt procedures designed to regulate conduct in their courtrooms and to preserve order during judicial proceedings. *People v. Angel,* 790 P.2d 844, 847 (Colo.App.1989).

 We noted in *Wakefield,* 764 P.2d at 74, that trial judges must take great care to avoid ex parte communications with a party, attorney, or individual affiliated with a party concerning pending judicial proceedings. While such prohibited communications did occur in this case, we conclude that the motion and affidavits do not establish a particular bias or prejudice against Wilkerson on the part of the trial judge.[6]

### III

For the foregoing reasons, we discharge the rule to show cause.

---

**6.** We note that in denying the recusal motion the trial judge articulated, *inter alia,* the conclusion that he was not biased or prejudiced against Wilkerson but rather had concern for Wilkerson's well-being. The applicable inquiry is not the actual motivation of the trial judge, but whether averred facts contained in the motion and supporting affidavits establish bias or prejudice, or the appearance thereof, as a matter of law. *People v. Botham,* 629 P.2d 589, 595 (Colo. 1981).