Douglas COMISKEY, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF PUEBLO, State of Colorado; The Honorable Eugene Halaas and The Honorable Dennis Maes, two of the Judges Thereof, Respondents.

No. 96SA316.

Supreme Court of Colorado,
En Banc.

Oct. 28, 1996.

Rehearing Denied Nov. 18, 1996.

David F. Vela, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for Petitioner.

G.F. Sandstrom, District Attorney, Tenth Judicial District, G.F. Sandstrom, Jr., District Attorney, Pueblo, for Respondents.

Justice MULLARKEY delivered the Opinion of the Court.

Petitioner Douglas Comiskey (Comiskey), the defendant in this first degree murder case, initiated this original proceeding pursuant to rule 21 of the Colorado Rules of Appellate Procedure to obtain relief from an order entered by the respondent, the District Court for the Tenth Judicial District of the State of Colorado, denying Comiskey's mo-

tion to recuse the trial court judge. Having issued a rule to show cause why the relief requested should not be granted, we discharge the rule.

## I

Comiskey is charged with two counts of first degree murder pursuant to section 18–3–102, 8B C.R.S. (1986 & 1996 Supp.), in a case pending in Pueblo County District Court before Judge Eugene Halaas. On August 19, 1996, Comiskey filed a motion for substitution of judges pursuant to Crim.P. 21 setting forth grounds for relief with accompanying affidavits. Specifically, the motion stated that Judge Halaas was biased because he engaged in ex parte communications with an expert witness who was acting as an agent of the state.

According to the motion, on August 9, 1996, after defense counsel had entered his appearance, Judge Halaas signed two search warrants authorizing a physical examination and x-rays of Comiskey's hands. The physical examination was to be performed by Dr. Donald Luebke. On the evening of August 9, 1996, defense counsel became aware of the search warrants and delivered a letter to the Pueblo County Jail informing Dr. Luebke that he was not to interview Comiskey or have any physical contact with him. Dr. Luebke called defense counsel and indicated that he was going to contact the district attorney and the court. Later that evening, Dr. Luebke called defense counsel at home and indicated that he had conducted the examination after talking with a deputy district attorney and the trial judge. This alleged contact with the trial judge was ex parte and not on the record. The motion for substitution argued that the ex parte communication between Judge Halaas and Dr. Luebke was grounds for recusal.[1]

After receiving the motion for substitution, Judge Halaas issued an order dated August 19, 1996, which "identified the issues presented by Defendant's Motion for Substitution," and requested a "transfer" of the matter to Chief Judge Dennis Maes for a ruling on the identified issues. On August 21, 1996, Chief Judge Maes issued an order denying the motion for substitution of judges and remanded the case back to Judge Halaas.

## II

Comiskey raises two main arguments in this matter. First, Comiskey argues that the procedure employed by the trial court which transferred the disqualification motion to another judge violated the requirements of Crim.P. 21 and section 16–6–201, 8A C.R.S. (1986). Because he contends that Colorado law does not permit district court judges to divide a case, Comiskey would have us conclude that the procedure employed in this case was tantamount to a recusal by the trial court. Second, Comiskey argues that the substance of the motion to recuse and its accompanying affidavits establish facts sufficient to compel the trial court to grant the recusal motion in this case. We reject both arguments.

### A

Comiskey's procedural argument concerns the requirements of section 16–6–201, 8A C.R.S. (1986), and Crim. P. 21(b) which provide the procedure for the disqualification of a judge who is "in any way interested or prejudiced with respect to the case, the parties, or counsel." § 16–6–201(1)(d), 8A C.R.S. (1986); Crim.P. 21(b)(1)(IV).[2] According to section 16–6–201(3),

> If the verified motion and supporting affidavits state facts showing grounds for disqualification, the judge must enter an order disqualifying himself. After disqualifying himself, the judge may require a full hearing upon the issues raised by

---

1. In his motion for substitution, Comiskey also argued that the procedure by which the warrants were obtained was improper. The petitioner has failed to provide this court with copies of the warrants and the record before us is insufficient to permit us to consider this argument. Therefore, we do not address it.

2. The grounds for disqualification set out in § 16–6–201 are identical to the grounds for disqualification set out in Crim.P. 21(b). *Smith v. District Court*, 629 P.2d 1055, 1056 n. 1 (Colo. 1981); *People v. District Court*, 192 Colo. 503, 506–07, 560 P.2d 828, 830–31 (1977).

the affidavits and shall request that another judge conduct the hearing.

§ 16–6–201(3), 8A C.R.S. (1986). Similarly, the Colorado Rules of Criminal Procedure state:

> If the motion and supporting affidavits state facts showing grounds for disqualification, the judge shall immediately enter an order disqualifying himself or herself. Upon disqualifying himself or herself, the judge shall forthwith notify the chief judge of the district, who shall assign another judge in the district to hear the action.

Crim.P. 21(b)(3). According to Comiskey, the language of both Crim. P. 21(b) and section 16–6–201 requires that the ruling on the motion for substitution be made by the trial judge personally. Therefore, Comiskey argues that the procedure in this case violated rule 21(b) and section 16–6–201 and that the use of such a procedure requires that a different judge be assigned to preside over the case. We disagree.

It is clear that Judge Halaas did not follow the procedure contemplated by the statute and the rule. However, nothing in the statute and rule indicates that the procedure described is the exclusive method for deciding a recusal motion. Thus, the question before us is whether Judge Halaas committed reversible error when he referred the motion to the chief judge for decision.

This is a matter of first impression for this court and Comiskey argues that we should follow *Beckord v. District Court of Larimer County*, 698 P.2d 1323 (Colo.1985), and hold that Judge Halaas effectively disqualified himself when he referred the recusal motion to the chief judge for determination. The situation here, however, is far different from *Beckord.*

*Beckord* concerned a judge who was presiding over multidistrict litigation involving several consolidated cases. *Id.* at 1325. Concluding that it would be improper for him

to hear issues in which the State of Colorado was involved, the judge in *Beckord* reassigned those issues to another judge.[3] *Id.* at 1329. We held in *Beckord* that the trial judge had no authority to reassign any part of a consolidated multi-district litigation. *Id.* at 1328. We also held that by finding himself to be disqualified from some of the issues in the case, the trial judge necessarily disqualified himself from hearing any part of the consolidated case. *Id.* at 1329.

There are several important differences between *Beckord* and this case. First, the *Beckord* ruling prohibiting the referral of certain issues was based on the rule governing multi-district litigation. *See* C.R.C.P. 42.1. Under that rule, assignments are made by the Chief Justice, and the assigned trial judge cannot make a reassignment of all or part of the case. *Beckord,* 698 P.2d at 1328. Second, the *Beckord* trial judge found that he was disqualified from deciding issues involving the state because of prior contacts he had had with the state's trial counsel. *Id.* at 1329. Therefore, *Beckord* stands for the proposition that a judge who is disqualified from part of a consolidated case is disqualified from the entire case. In Comiskey's case, there is no basis to impute disqualification from the fact that Judge Halaas referred the recusal motion to Chief Judge Maes.

The Colorado Court of Appeals recently dealt with the issue now before us in *People v. Lanari,* 926 P.2d 116 (Colo.App.1996). After his convictions were reversed and the case was remanded, the defendant in *Lanari* moved to recuse the trial judge, arguing that the judge was biased because he had issued rulings that were ultimately reversed by the supreme court. *See Lanari v. People,* 827 P.2d 495 (Colo.1992). Like the present case, the trial judge referred the motion for recusal to the chief judge who denied it.

---

**3.** Procedurally, *Beckord* was a complicated case. As a result of a flood in the Town of Estes Park, at least ten separate lawsuits naming five separate defendants were filed in the District Courts for the City and County of Denver and for Larimer County. *Beckord,* 698 P.2d at 1325. Pursuant to C.R.C.P. 42.1, the litigation was consolidated in one judicial district and transferred to a

single district judge. *Beckord,* 698 P.2d at 1325. According to the motion for substitution, the judge assigned to the case indicated that, due to an undisclosed conflict, he was transferring all issues concerning the State of Colorado to a different judge. *Id.* We concluded that such a transfer was not authorized by C.R.C.P. 42.1. *Beckord,* 698 P.2d at 1325.

On appeal, Lanari argued that the procedure employed by the trial court in denying the motion for substitution was erroneous and required the judge's automatic recusal. Lanari relied on Crim. P. 21(b) and section 16–6–201, as well as the holding in *Beckord.* The court of appeals disagreed and reasoned that, unlike *Beckord,* the trial judge in Lanari's case "made no conclusions that it would be improper for him to consider the issue on remand." *Lanari,* at 120. The court of appeals therefore affirmed the procedure employed by the trial court and held that the actions of the trial court were not error, did not prejudice the defendant and did not undermine the fairness of the trial. *Id.*

■ In determining whether a motion for substitution of a judge is legally sufficient, a trial court may consider only the motion and affidavits and must accept the facts contained in those documents as true. *People v. Botham,* 629 P.2d 589, 595 (Colo. 1981). The motion and affidavits are legally sufficient if they " 'state facts from which it may reasonably be inferred that the respondent judge has a bias or prejudice that will in all probability prevent him or her from dealing fairly with a party.' " *People v. District Court,* 898 P.2d 1058, 1061 (Colo.1995) (quoting *People v. Hrapski,* 718 P.2d 1050, 1054 (Colo.1986)); *see also Smith v. District Court,* 629 P.2d 1055, 1056 (Colo.1981).

■ While we agree that section 16–6–201 and Crim. P. 21(b) contemplate that the assigned trial judge initially rule on the motion for recusal, in this case there is no evidence that the procedure employed was unfair to Comiskey. On the contrary, because the ruling on the motion is limited solely to the reasonable inferences which can be drawn from the facts alleged in the motion and the supporting affidavits, it makes no difference whether the sufficiency of the motion is evaluated by the trial judge or another judge. In either instance, the judge cannot interject his or her substantive knowledge of the alleged facts. The facts as alleged must be taken as true. Thus, we agree with the rationale employed by the court of appeals in *Lanari.* Therefore, while a trial court should adhere to the procedure set forth in

the statute and rule, referral of the motion to the chief judge for decision does not require recusal of the trial judge.

**B**

Comiskey next argues that his motion for substitution was sufficient to compel the trial judge to recuse himself because Judge Halaas engaged in ex parte communications with a possible witness for the state. To be legally sufficient, a motion for disqualification of a judge and supporting affidavits must state facts from which it may reasonably be inferred that the judge has a bias or prejudice that in all probability will prevent him or her from dealing fairly with the defendant. *People v. District Court,* 898 P.2d 1058, 1061 (Colo.1995); *People v. Hrapski,* 718 P.2d 1050, 1054 (Colo.1986).

In this case, Comiskey's motion states that Dr. Luebke communicated with Judge Halaas without defense counsel present. Then, after this alleged ex parte conversation with Judge Halaas, Dr. Luebke proceeded to examine Comiskey. Comiskey's motion for substitution also included a letter from Dr. Luebke which indicated that he learned of the defense counsel's objection to the examination when he arrived at the jail. Dr. Luebke states in his letter that he was then "able to validate the search warrant and [proceed with his] examination."

■ The motion for substitution and supporting affidavits support the reasonable inference that Judge Halaas engaged in ex parte communications with an agent of the state, Dr. Luebke. Canon 3(A)(4) of the Colorado Code of Judicial Conduct states that a judge should "neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding." C.J.C. Canon 3(A)(4). Additionally, even in a case where a judge may be convinced of his own impartiality, the appearance of bias or prejudice can so undermine the litigant's confidence in the proceeding, or the public's confidence in the system, as to require a judge's disqualification. *S.S. v. Wakefield,* 764 P.2d 70, 73 (Colo.1988); *Johnson v. District Court,* 674 P.2d 952, 955–56 (Colo.1984). Therefore, the question now before this court

is whether it can reasonably be inferred, from the fact that the judge engaged in an ex parte communication, that the judge has or appears to have a bias or prejudice. *Wakefield,* 764 P.2d at 73; *Johnson,* 674 P.2d at 955–56.

We considered the appearance of partiality created by a trial court initiating ex parte communications in *Wakefield.* In that case, the trial court was concerned that the petitioner, a respondent mother in a dependency proceeding, was not receiving effective representation from her court appointed attorney. *Wakefield,* 764 P.2d at 71. The motion for substitution and supporting affidavits indicated that the trial court's clerk, at the direction of the trial court, contacted the respondent mother and asked her to meet with the trial court without her attorney. *Id.* at 72. The respondent mother proceeded to notify her attorney of the clerk's telephone call and subsequently cancelled her meeting with the trial court. *Id.*

Ultimately, the trial court met with the mother and her attorney together and disclosed that he was concerned about the quality of representation the mother was receiving. *Id.* The trial court explained that he had wanted to speak with the mother alone so that she would feel comfortable talking about her attorney. *Id.* The judge asked the mother if she desired a new attorney, but the mother indicated that she intended to proceed with her current attorney. *Id.* The mother and her attorney subsequently filed a motion for substitution of judges arguing, among other things, that the ex parte communication between the judge and the mother demonstrated bias against the mother and her attorney. *Id.* at 72. The trial court denied the motion and the mother appealed. *Id.*

We concluded in *Wakefield* that although the trial court's initiation of ex parte communications was improper, the judge did not err in refusing to disqualify himself. *Id.* at 72. We held that the type of ex parte communication engaged in by the trial court in *Wakefield* was "not an adequate substitute for a legally sufficient statement of facts regarding bias or prejudice." *Id.* at 74.

We also discussed the appearance of partiality created by an ex parte communication in *Goebel v. Benton,* 830 P.2d 995 (Colo.1992). In *Goebel,* the motion and supporting affidavits indicated that the trial court judge had a lunch meeting with the executive director and attorneys for a corporation that had been dismissed from the action but was allegedly a successor to the defendant party in the case. *Id.* at 997. The motion and supporting affidavits stated that this executive director was a likely witness in future proceedings. *Id.* The motion also alleged that the meeting related directly to an issue of critical importance to an ultimate ruling of the judge. *Id.*

In *Goebel,* we held that the motions and supporting affidavits demonstrated facts sufficient to reasonably infer that the judge's actions had compromised the appearance of fairness. *Id.* at 999. In reaching this conclusion, we explained that "[t]he critical test under *Wakefield* is whether the affidavits in support of the motion for disqualification ... establish facts from which it may reasonably be inferred that the judge is [or appears to be] prejudiced or biased...." *Goebel,* 830 P.2d at 1000. Unlike *Wakefield,* where the judge was attempting to ensure fairness to the respondent mother in a dependency proceeding, the ex parte meeting in *Goebel* related directly to an issue of critical significance to the judge's ultimate ruling. Moreover, we pointed out that the motion in *Goebel* asserted that the judge already had given unfavorable rulings and caused unreasonable delays in the proceedings. *Id.* Although we accepted that a ruling by a judge on a legal issue does not necessarily require disqualification, we held that the affidavits in *Goebel,* considered in their totality, were sufficient to show that the judge demonstrated a "bent of mind" and should therefore have disqualified himself. *Id.*

The issue of ex parte communication was most recently considered in *Wilkerson v. District Court,* 925 P.2d 1373 (Colo.1996). In *Wilkerson,* the defendant in a criminal case suffered from apparent epileptic seizures during two preliminary hearings. At 1374. Wilkerson subsequently filed a motion with supporting affidavits requesting recusal of

the trial judge. *Id.* Among other things, the motion and supporting affidavits argued that the trial court received ex parte information that Wilkerson did not suffer from epilepsy. *Id.* Further, the motion stated that a victim-witness coordinator from the district attorney's office had approached the trial court outside the presence of defense counsel and informed the court that a witness was having difficulty testifying because of the defendant's in-court conduct and did not wish to testify again. *Id.* Wilkerson's motion asserted that the trial court subsequently concluded that Wilkerson and his attorneys would only be able to participate in the next hearing from the jail through use of a video camera. *Id.* Wilkerson argued that the trial court's conclusion was based on the improperly obtained ex parte information and therefore required the trial court's recusal. *Id.* The trial court disagreed and Wilkerson appealed.

After issuing a rule to show cause, we discharged the rule and held that the rationale of *Wakefield* was dispositive. As in *Wakefield*, we held that while the trial court's involvement in ex parte communications was improper, the motions and affidavits failed to allege facts from which an actual or apparent bias could reasonably be inferred. Further, we pointed out that unlike *Wakefield*, the trial court did not initiate the conversation with the victim-witness coordinator.

■ Our previous decisions demonstrate that the mere allegation that a judge engaged in an ex parte communication is not enough to require recusal. The petitioner must also allege facts sufficient to infer that the judge is or appears to be biased. Sufficient factual allegations must appear on the face of the documents submitted because, when ruling on the motion, the court is limited solely to the facts alleged in the motion and supporting affidavits.

Comiskey's motion states, in relevant part,

12. After an acrimonious discussion [by defense counsel] with the doctor … *the doctor indicated that he was going to call the district attorney and this court.*

. . . .

. . . .

15. At approximately 9:30 P.M., Dr. Luebke called counsel at home and indicated that he had conducted the medical exam *after talking with Deputy District Attorney Kay Howard and this Court in an extra judicial proceeding without a record.* At no time was counsel contacted by anyone even though counsel had repeatedly objected to this procedure. (See attached letter which counsel requests be accepted . as an affidavit because Dr. Luebke has refused our request for an interview.)

(emphasis added). Defense counsel's affidavit makes the same allegations. The letter from Dr. Luebke referenced in the motion states:

I [Luebke] was called by District Attorney Gus Sandstrom on the afternoon of Friday August 9, 1996 to assist him in the execution of a search warrant for examination of the hands of Mr. Douglas Comiskey. … When I arrived at the Pueblo County Jail in the evening of the same day, I was given a copy of the search warrant. Because of your [defense counsel's] objection, *I was later able to validate the search warrant and proceeded with my examination.*

(emphasis added).

Taking the factual allegations as true, we know only that Dr. Luebke had an ex parte conversation with the trial judge. There are no facts alleged regarding the contents of that conversation. The underscored language in Dr. Luebke's letter does not refer to the trial judge and does not constitute a factual assertion that the judge "validated" the search warrant.

Thus, unlike *Goebel*, we find that the allegations in Comiskey's motion and supporting affidavits are insufficient to support recusal of the trial judge. In *Goebel*, the petitioner alleged that the judge, prior to ruling on an ultimate issue in the case, met with a third party and discussed how the third party's future plans might affect the judge's ruling. *Goebel*, 830 P.2d at 997. The petitioner in *Goebel* also alleged that the judge's bias was " 'reflected by his delay and inaction in [the] case.' " *Id.* In the case at bar, the motion and supporting affidavits show only that the doctor contacted the trial court. As such,

the allegations of fact are wholly inadequate and the disqualification motion was properly denied.

Comiskey also argues that Judge Halaas must be disqualified from the case because he has issued search warrants that Comiskey intends to challenge. According to Comiskey, *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), requires that orders to issue search warrants be reviewed by a neutral and detached magistrate. Comiskey argues that since Judge Halaas issued the warrants in question, he is no longer a neutral and detached magistrate and cannot fairly review any future motions to suppress evidence obtained through those warrants.

We decline to address this argument because, as stated above, Comiskey has failed to provide this court with copies of the warrants and there is no indication that the warrants have yet been challenged at the trial court. We note, however, that information a judge learns in the performance of his or her judicial duties is generally not sufficient grounds for disqualification. *People v. Ramos,* 708 P.2d 1347, 1351 (Colo.1985); *Smith v. District Court,* 629 P.2d 1055, 1057 (Colo.1981). Several states have held that the fact that a judge issued the search warrant in question does not disqualify him or her from fairly ruling on a motion to suppress. *Holloway v. State,* 293 Ark. 438, 738 S.W.2d 796 (1987); *Trussell v. People,* 67 Md.App. 23, 506 A.2d 255 (1986); *State v. Poole,* 472 N.W.2d 195 (Minn.App.1991); *State v. Gardner,* 741 S.W.2d 1 (Mo.1987), *cert. denied,* 486 U.S. 1025, 108 S.Ct. 2001, 100 L.Ed.2d 232 (1988); *People v. Pointer,* 135 N.J.Super. 472, 343 A.2d 762 (1975); *People v. McCann,* 85 N.Y.2d 951, 626 N.Y.S.2d 1006, 650 N.E.2d 853 ; *Hawkins v. State,* 586 S.W.2d 465 (Tenn.1979).

III

In summary, the procedure employed by the trial court which allowed the chief judge to rule on the merits of the recusal motion did not constitute reversible error. On its merits, the motion for substitution of judges was properly denied because it did not demonstrate facts from which it might reasonably be inferred that Judge Halaas was or appeared to be biased. Therefore, we discharge the rule to show cause.