**The PEOPLE of the State of Colorado, Complainant,**

**v.**

**John E. FITZGIBBONS, Attorney–Respondent.**

**No. 95SA152.**

Supreme Court of Colorado, En Banc.

Jan. 22, 1996.

---

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

James F. Donaldson, Denver, for Attorney–Respondent.

PER CURIAM.

A hearing panel of the supreme court grievance committee approved a hearing board's recommendation that the respondent be publicly censured. The respondent excepted to the findings and recommendation. We accept the hearing panel's recommendation and publicly censure the respondent.

I

The respondent was admitted to practice law in Colorado in 1981. Under respondent's exceptions, we first address the procedural matters before discussing the substantive issues raised.

At the beginning of the hearing, the respondent objected to the composition of the hearing board and made an oral motion for two members of the board to recuse themselves. The basis for the objection and motion for recusal was that the respondent's attorney had recently received a letter of admonition in an unrelated matter, signed by the vice-chair of Hearing Panel B, and a member of the respondent's hearing board. A second member of Hearing Panel B, which was the panel that had issued the letter of admonition to the respondent's lawyer, was the presiding officer of the respondent's hearing board. The hearing board overruled the objection and denied the motion for recusal, as well as the respondent's request that the hearing be stayed pending "appeal" of the rulings. In his exceptions, the respondent raises three objections to the composition of the hearing board, in particular, the participation of the vice-chair of the hearing panel on the hearing board.

■ First, the respondent asserts that the vice-chair had no power to appoint herself as a hearing board member the day before the hearing due to the absence of one of the previously appointed members because of medical reasons.

The supreme court grievance committee consists of nineteen members. C.R.C.P. 241.2(a)(1). The committee members elect a chair from among themselves, C.R.C.P. 241.2(a)(3), who in turn appoints two vice-chairs, *id.* The chair divides the committee into two panels of nine members each, and

the chair is an ex-officio member of each panel. C.R.C.P. 241.2(c). Each panel has a vice-chair. C.R.C.P. 241.2(c)(2) provides:

> **(2) Hearing Panels.** When a panel is acting as a hearing panel, its Vice–Chairman shall designate a hearing board which shall conduct hearings on complaints as provided in these Rules. At the conclusion of the proceedings before the hearing board, the hearing panel shall review the report of the hearing board as provided in C.R.C.P. 241.15(b).

The hearing board is designated as follows:

> **(b) Designation of a Hearing Board.** All hearings on complaints seeking disciplinary action against a respondent shall be conducted by a hearing board designated by the Chairman or a Vice–Chairman. A hearing board shall consist of at least three persons. *At least one member of every hearing board shall be a member of the hearing panel or a former member of the Committee,* and at least two members of every hearing board shall be members of the Bar of Colorado.

C.R.C.P. 241.14(b) (emphasis added). The rules do not prohibit a vice-chair from appointing him or herself to a particular hearing board. Given the circumstance where an appointed member of the board has a medical emergency and is unable to serve, the vice-chair of the hearing panel properly sat on the hearing board.

The respondent's second objection is to the vice-chair sitting on both the board and on the hearing panel, which reviewed the board's work. C.R.C.P. 241.2(d) states in part:

> **(d) Abstention of Committee Members.** Committee members shall refrain from taking part in any proceedings in which a judge, similarly situated, would be required to abstain.

Hearings before the board "shall be conducted in conformity with the Colorado Rules of Civil Procedure, the Colorado Rules of Evidence, and the practice in this state in the trial of civil cases...." C.R.C.P. 241.14(d). In relevant part, C.R.C.P. 97 provides:

> A judge shall be disqualified in an action in which he is interested or prejudiced, or

has been of counsel for any party, or is or has been a material witness, or is so related or connected with any party or his attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein. A judge may disqualify himself on his own motion for any of said reasons, *or any party may move for such disqualification and a motion by a party for disqualification shall be supported by affidavit.* Upon the filing by a party of such a motion all other proceedings in the case shall be suspended until a ruling is made thereon.

(Emphasis added.) The respondent did not file the affidavit required by C.R.C.P. 97. Nevertheless, the hearing board reached the merits of the respondent's objection and recusal motion, and so do we.

■ The vice-chair was a member of the respondent's hearing board, which concluded that the respondent violated the Code of Professional Responsibility and that he should be publicly censured. The vice-chair also sat on the hearing panel which reviewed and approved the board's findings and recommendation. The respondent maintains, however, that the vice-chair "was required to recuse herself from participating on the full [hearing] panel and again voting on the hearing board's findings and recommendation since at that stage her impartiality might reasonably be questioned because she had 'personal knowledge of disputed evidentiary facts concerning the proceeding. . . .' " Code of Judicial Conduct, Canon 3(C)(1)(a).

First, because the vice-chair sat on the hearing board that heard testimony concerning disputed facts, and made findings with respect to those disputed facts, does not mean that she had *"personal* knowledge of disputed evidentiary facts concerning the proceeding. . . ." *Id.* (emphasis added).

Moreover, it was not improper for the vice-chair to participate on the hearing panel that reviewed her own findings. The rules contemplate that at least one member of the hearing panel will serve on the hearing board. C.R.C.P. 241.14(b). No rule prohibits a hearing board member from sitting on the hearing panel that reviews the board's findings.

Finally, the respondent claims the vice-chair should have recused herself because she had recently signed a letter of admonition addressed to the respondent's lawyer. At the hearing, the respondent's lawyer stated:

> I've never met any of you. I've had no contact. I'm not starting to allege that you personally have done things which show bias to me, other than I've been served with a letter of admonition, I guess, out of—signed by [the vice-chair] in less than a month, which certainly calls in the question of the credibility of me and my clients. And I think that's a very serious matter.

■ With respect to a judicial proceeding, "a ruling by a judge on a legal issue or a demonstration of prejudice against the lawyer for the defendant does not require recusal." *Brewster v. District Court,* 811 P.2d 812, 814 (Colo.1991). However, "[b]ecause a judge's bias or prejudice against an attorney can adversely affect the party represented by the attorney, disqualification should also be required when a judge so manifests an attitude of hostility or ill will toward an attorney that the judge's impartiality in the case can reasonably be questioned." *S.S. v. Wakefield,* 764 P.2d 70, 73 (Colo.1988).

In *Wakefield,* the petitioner, S.S., who was party to a dependency proceeding in Denver Juvenile Court, asserted in an original proceeding that the juvenile court judge should have recused himself because he had initiated an ex parte communication with her for the purpose of expressing the judge's concerns with the effectiveness of S.S.'s lawyer. 764 P.2d at 71–72. Even though the ex parte communication was improper, we found that the juvenile court judge did not err in refusing to disqualify himself because neither the motion nor affidavit "alleged sufficient facts from which it could reasonably be inferred that the judge had a personal bias or prejudice against S.S. or her court-appointed attorney." *Id.* at 72.

■ For a similar reason, the fact that the vice-chair had recently signed a letter of admonition addressed to the respondent's lawyer in an unrelated matter does not rea-

sonably lead to the conclusion that she was personally biased against the respondent or his lawyer. The hearing board therefore correctly overruled the respondent's objections to its composition and denied his motion to recuse.

## II

■ The respondent has also excepted to the hearing board's denial of his motion for continuance because of the inability of the respondent's expert witness to attend the hearing because he was on vacation. The respondent asserts that the denial of a continuance was fundamentally unfair because the formal complaint had been amended forty-eight days before the hearing to allege for the first time that he had committed misconduct in prosecuting an appeal to the court of appeals. In denying the motion, filed nine days before the hearing was scheduled, the board stated:

> No objection to [the assistant disciplinary counsel's] request to file an amended complaint was entered. No objection or motion to vacate the Order granting leave to file amended complaint was filed, nor was any mention of any problem with the hearing date brought up by counsel for the Respondent at the telephone status conference held between [the assistant disciplinary counsel] and attorney for Respondent.... Additionally, there was no indication of any need to reschedule the hearing in Respondent's disclosure certificate which was mailed on December 21, 1994.

> THEREFORE, we find no good cause exists and Respondent's Motion to Continue the Hearing now set for January 6, 1995 is denied.

Our examination of the record reveals that the hearing board did not abuse its discretion in denying the respondent's motion for continuance.

## III

The hearing board found that the following, most of which was contained in an unconditional stipulation of facts between the parties, had been established by clear and convincing evidence.

### A

The respondent and his wife bought a house from the parents of Catherine M. Den in 1981. They executed a promissory note in the amount of $80,000 payable to Den and to her mother, now deceased. The note was secured by a deed of trust on the house.

Between June 1988 and January 1991, eleven checks written by the respondent or his wife for the monthly house payment were presented to Den's bank, but were returned unpaid. When the checks were again presented for payment, eight of the checks were honored, and three were returned for insufficient funds a second time. A total of fourteen separate deposits were not honored. The respondent replaced the three checks that were returned a second time with money orders.

In 1988, the respondent attempted to refinance the promissory note, which bore an interest rate of 13%, but the refinancing was not approved. He filed applications again in 1991 to refinance, and the mortgage companies requested information from Den about the respondent's payment history. On a report form from a credit reporting agency, Den wrote: "Between 6/21/88 and 1/2/91 checks bounced 14 times. No info before 6/88 and no checks bounced since 1/91."

Den also wrote the following on a form from Colorado National Bank in response to a question about the number of late payments made: "Records since 6/88 checks returned to my bank 14 times eventually made good. No checks have been bounced since January second [sic] 1991." The bank denied the respondent's application for refinancing.

On September 16, 1992, the respondent wrote Den spelling out the options he had in order to decrease his mortgage payment. He indicated that he could apply to refinance the note again, but that "[t]his would only be successful if you give a spotless report." Another alternative, he suggested, would be for Den to agree to restructure the existing note at a lower interest rate. If Den was unwilling to agree to either of these alternatives,

however, the respondent indicated that one of his options would be to sue her for making the statements which caused the refinancing to be denied.

On September 22, 1992, Den's lawyer expressed his client's unwillingness to refinance the note or to falsify credit inquiries. The hearing board found that the respondent's September 16 letter to Den was asking her to falsify a report by furnishing a "spotless" report. In addition, the respondent's letters constituted threats to sue Den if she did not act in accordance with the respondent's alternatives.

In November 1992, the respondent filed a complaint on his own behalf, and as attorney for his wife, against Den. The complaint asserted claims based on libel per se, libel per quod,[1] interference with contract, and misrepresentation; all based on Den's publication of allegedly false or misleading credit information to a prospective lender in connection with the respondent's refinancing efforts. The complaint was amended to include a claim of outrageous conduct and a prayer for declaratory relief. On January 26, 1993, the district court granted Den's motion for summary judgment and dismissed the complaint with prejudice. The respondent paid Den's attorney fees in the amount of $1,565 pursuant to the district court's order.

The hearing board found that Den's responses to the credit reporting agency and to the Colorado National Bank were made with accuracy and in good faith, but disapproved of the respondent's conduct. The board determined that the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); DR 7–102(A)(1) (in representing a client, a lawyer shall not file a suit on behalf of the lawyer's client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another); and DR 7–102(A)(2) (a lawyer shall not knowingly advance a

claim or defense that is unwarranted under existing law).

B

The respondent appealed the dismissal to the court of appeals. On June 30, 1994, the court of appeals affirmed the district court's rulings. *Fitzgibbons v. Den,* No. 93CA0616 (Colo.App. June 30, 1994) (not selected for publication). The court of appeals concluded that summary judgment was properly granted against the respondent and his wife on their claims of defamation, negligent misrepresentation, and intentional interference with contract. *Fitzgibbons v. Den,* No. 93CA0616, slip op. at 4–8. The court of appeals held:

Finally, plaintiffs contend that the trial court erred in finding their suit to be frivolous, groundless, and vexatious and in awarding attorney fees to defendant. The record fully supports the trial court's finding and award.

We further find that the plaintiffs' pursuit of this appeal continues to be frivolous, groundless, and vexatious. Therefore, pursuant to C.A.R. 38(d) we award defendant attorney fees and double costs incurred in her defense of this appeal.

*Id.* at 8–9. Based on certain representations by the respondent, the hearing board assumed that the respondent filed a petition for certiorari in *Fitzgibbons v. Den,* and that this court denied the petition. In fact, the respondent filed a motion to enlarge the time for filing the petition for certiorari, which we granted on August 19, 1994, to and including October 1, 1994. No petition for certiorari was filed by October 1, however, and on October 5, 1994, the respondent filed a second motion for extension of time to file the petition. We denied the second motion and the case was closed on October 27, 1994. This court has never considered a properly filed petition for certiorari in *Fitzgibbons v. Den.* Therefore, we have not reviewed the merits of the court of appeals' judgment.

The board concluded that the respondent's conduct in prosecuting the appeal, which occurred after the effective date of the Rules of

---

**1.** "A statement is libel per quod if it requires innuendo or extrinsic evidence to establish its

defamatory nature." *Keohane v. Stewart,* 882 P.2d 1293, 1297 n. 3 (Colo.1994).

Professional Conduct, January 1, 1993, violated R.P.C. 3.1 (a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law); R.P.C. 4.4 (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person); and R.P.C. 8.4(h) (a lawyer should not engage in conduct that adversely reflects on his fitness to practice law).

### IV

■ The respondent raises two challenges to the hearing board's findings. First, he asserts that the board "usurped" the power of the supreme court by making the following finding:

24. However, the Board finds that Ms. Den was subjected to threats of lawsuit by Respondent, followed by the filing of a lawsuit in the Denver District Court, which was appealed to the Colorado Court of Appeals, and which the Respondent then filed a request for Writ of Certiorari to the Colorado Supreme Court, *all based on frivolous and groundless claims.*

(Emphasis added.) The respondent complains that only this court can make the legal finding that the respondent's legal claims against Den were "frivolous and groundless." We disagree. The conclusions of the district court and the court of appeals in *Fitzgibbons v. Den* are certainly evidence that the respondent's claims were "frivolous and groundless." Moreover, no proper petition for writ of certiorari was ever filed with this court. After examining the record in this case, we find absolutely no reason to overturn the hearing board's findings that the respondent's claims were "frivolous and groundless."

■ Finally, the respondent maintains that the board erred in finding "that the September 16, 1992 letter from Respondent to Ms. Den is asking her to falsify a report by the request to furnish a 'spotless' report." He argues that the report form allowed Den to furnish a "spotless" credit report because it only authorized or required Den to report on the previous twelve-month period. The credit reporting form contained the following preprinted statement:

PLEASE NOTE: EFFECTIVE JULY 1, 1988, A 12–MONTH PAYMENT HISTORY (OPENING DATES PERMITTING) IS REQUIRED TO SATISFY FEDERALLY MANDATED UNDERWRITING GUIDELINES.

Whatever interpretation this notice is given, however, does not undercut the board's finding that the respondent's September 16 letter asked Den to falsify the report. First, the letter does not even mention the twelve-month requirement. Second, the record contains evidence that some of the respondent's checks had in fact been returned for insufficient funds within the twelve months preceding the date of Den's report in July 1991, as well as within twelve months of his September 16, 1992, letter. Thus a "spotless" credit report was not possible without some falsification. We therefore accept the hearing board's findings.

### V

■ The hearing board recommended that the respondent be publicly censured and the panel approved the recommendation. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating or aggravating factors, public censure is generally warranted "when a lawyer knowingly engages in ... conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." *Id.* at 5.13. Similarly, public censure is appropriate "when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding." *Id.* at 6.23.

Aggravating factors found by the hearing board include the respondent's dishonest or selfish motive, *id.* at 9.22(b); a pattern of misconduct, *id.* at 9.22(c); the respondent's refusal to acknowledge the wrongfulness of

his conduct, *id.* at 9.22(g); and his substantial experience in the practice of law, *id.* at 9.22(i). In mitigation, the respondent has no prior disciplinary record, *id.* at 9.32(a); and he has cooperated in these proceedings, *id.* at 9.32(e).

The board further determined that Den has suffered little or no *monetary* damage because the respondent has paid off the promissory note and has either paid or promised to pay Den the legal fees she incurred in *Fitzgibbons v. Den*, as ordered by the district court and the court of appeals. Given the seriousness of the misconduct taken together with the factors in mitigation and aggravation, we conclude that a public censure is an appropriate sanction. We therefore accept the recommendation of public censure from the hearing panel.

## VI

John E. Fitzgibbons is hereby publicly censured. It is further ordered that the respondent pay the costs of this proceeding in the amount of $234.99 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920-S, Denver, Colorado 80202, within thirty days after the announcement of this opinion.