**In the Matter of Patrick Anene EGBUNE.**

Nos. 98SA120, 98SA206.

Supreme Court of Colorado, En Banc.

Jan. 19, 1999.

Linda Donnelly, Attorney Regulation Counsel James S. Sudler, Assistant Attorney Regulation Counsel Denver, for Complainant.

Patrick Anene Egbune, Pro Se Aurora.

PER CURIAM.

We have consolidated two disciplinary proceedings in order to issue one opinion and order. The first discipline case, No. 98SA120, concerns false accusations made by the respondent, Patrick Anene Egbune, against an attorney and a judge. The second case, No. 98SA206 concerns Egbune's sexual assault of a client. In No. 98SA120, a hearing panel of the supreme court grievance committee accepted the findings of a hearing board, but modified the recommendation. The panel recommended that the respondent be suspended for thirty days and be required to comply with certain conditions. The same hearing panel accepted the findings and recommendation of a second hearing board in No. 98SA206, and recommended that the respondent be suspended for one year and one day. Considering the seriousness of both of these cases, we order that the respondent be suspended for a year and a day, which requires the respondent to petition for reinstatement and establish that he is once again fit to practice law.

## I. No. 98SA120

Patrick Anene Egbune was admitted to practice law in Colorado in 1991. The hearing board in No. 98SA120 made the following findings by clear and convincing evidence.

## A. Count I

In 1994, Kola Fadeyi entered into a commercial lease with Zephyr Smoky Hill on behalf of his business, Flavorz Ice Cream. Under the terms of the lease, certain basic construction finish work was Zephyr's responsibility. Any other improvements were the tenant's responsibility. Metro Mechanical Services billed Flavorz for finish work. Fadeyi refused to pay, claiming that the work had been completed at Zephyr's direction, not his. There was no written agreement between Metro and Flavorz for the finish work.

In October 1994, Metro filed a verified complaint in replevin in district court against Fadeyi. Egbune filed an answer on behalf of Fadeyi, but did not assert any counterclaims or cross-claims. About a month later, Metro's lawyer filed a motion to file an amended complaint, adding Zephyr and the general contractor as defendants. Egbune filed an objection to the amended complaint, together with a motion for summary judgment, asserting that Fadeyi had not entered into a written contract with Metro. On January 5, 1995, the district court granted Metro's motion to amend the complaint. Egbune filed an answer to the amended complaint.

Metro's attorney contacted Egbune in February 1994 and offered to dismiss all claims against Fadeyi so that Fadeyi would owe Metro nothing. Egbune declined the offer because Fadeyi wanted to recover attorney fees under section 13–17–102(2), 5 C.R.S. (1998), on the ground that Metro's action lacked substantial justification. No attorney fees may be assessed, however, if a party voluntarily dismisses a claim or action within a reasonable time after the party or lawyer filing the dismissal knows, or should know, that he or she would not prevail. See § 13–17–102(5).

In March 1995, Zephyr, Metro, and the general contractor filed a stipulated dismissal since Zephyr had elected to pay Metro for the finish work. The court-approved stipulation stated that it was not to be construed to affect in any way the claims between Metro and Fadeyi.

Egbune filed a second motion for summary judgment, identical to the first except for the caption, before the court had ruled on his first motion. Both motions for summary judgment were denied. The court also agreed with the plaintiff that the second motion was frivolous and assessed attorney fees against Egbune in the amount of $125. The case was ultimately settled in 1996, whereby all the claims were dismissed and each party would be responsible for its own fees.

Count I of the complaint charged the respondent with providing incompetent representation to his client, see Colo. RPC 1.1; filing a second frivolous motion for summary judgment, see Colo. RPC 3.1; and engaging in conduct prejudicial to the administration of justice, see Colo. RPC 8.4(d). The hearing board recommended that Count I be dismissed for the following reasons. First, the board disagreed with the complainant that Egbune's representation was incompetent. Second, the board declined to find by clear and convincing evidence that the filing of the second motion for summary judgment was frivolous, even though the district court so found.

■ The district court's ruling was not binding on the hearing board because the burden of proof in a civil action is generally by a preponderance of the evidence, see 13-25-127, 5 C.R.S. (1998), while in a lawyer discipline proceeding proof is by clear and convincing evidence, see C.R.C.P. 241.14(d). Issue preclusion therefore does not apply. See Restatement (Second) of Judgments § 28(4) (1982); see also Grogan v. Garner, 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (stating that if the clear-and-convincing standard applies to the non-dischargeability of a debt because of fraud in a second proceeding, a prior judgment utilizing a preponderance standard could not be given collateral estoppel effect).

Finally, the board concluded that the filing of the second motion for summary judgment did not rise to the level of conduct prejudicial to the administration of justice. The complainant did not except to the board's findings, so Count I is dismissed.

## B. Count II

Zephyr filed an action against Flavorz and Fadeyi, individually, in May 1995 in county court to recoup the amount paid to Metro in the district court case. Zephyr also sought costs, expenses, and attorney fees. Egbune filed an answer, counterclaim, and a motion for declaratory judgment. In addition, he filed a motion to consolidate the county court claim filed by Zephyr with the claim filed by Metro in the district court, a motion to dismiss the county court claim, and a motion for sanctions.

In her objection to the motion to consolidate, Zephyr's lawyer stated incorrectly that trial was already scheduled in the county court case. Egbune advised the lawyer of her error and indicated that if she failed to correct it, grounds existed for him to file a grievance against her. The lawyer advised the county court of her mistake.

On June 8, 1995, the magistrate denied the motion to consolidate because C.R.C.P. 313 sets out the proper procedure to transfer a case to the district court. He also ruled that Egbune could either transfer the case under Rule 313 and pay Zephyr's attorney fees, or he could remain in the county court and attorney fees would not be imposed. After Egbune filed the appropriate motions to transfer the case, the magistrate asked Zephyr's lawyer to submit an affidavit reflecting the attorney fees she requested. At the same time he filed the motion to transfer, Egbune filed counterclaims alleging damages for intentional and negligent infliction of emotional distress, and bad faith.

Zephyr's lawyer filed an affidavit requesting attorney fees of $1,557.50. Egbune asked the court to reconsider the award of attorney fees and the other lawyer responded with a request for an additional $122.50. Egbune filed a reply to this response. On October 6, 1995, the district court judge awarded Zephyr's lawyer $1,000 in attorney fees against Flavorz and Fadeyi.

On October 17, 1995, the respondent wrote the following to the other lawyer: "I will also be initiating disciplinary investigation against any party including anyone in the judiciary that may have assisted you or the Plaintiff in

covering up or ignoring the fact that there is enough evidence to suspect that you failed to exercise candor in your dealings in this case."

Fadeyi was served with a notice of garnishment. Egbune did not receive notice of the garnishment until after Fadeyi had been served. The respondent did not offer to refund the amount garnished from Fadeyi's bank account.

Egbune filed a notice of appeal in the court of appeals with respect to the attorney fees. In his notice of appeal, the respondent stated:

5. In submitting her affidavit, [Zephyr's lawyer] lied under oath. . . .

6. [The county court magistrate] abstained from ruling on the issue of attorney's fees that he had ordered after [Zephyr's lawyer] lied under oath. . . .

7. In continuing her misstatement of facts, [Zephyr's lawyer] submitted an affidavit of attorney's fees of $1,557.50, in the County Court, then in the District Court, by an [sic] through the Order and Judgment she prepared for [the district judge], through what appears to be an ex parte communication, claimed $1,680.00 as attorneys' fees and the District Court awarded $1,000.00.

One of the issues raised in the notice of appeal was "[w]hether attorney's fees should be awarded, given the ex parte communication between [the district judge and Zephyr's lawyer] concerning payment of attorney's fees." Egbune repeated the allegation of an ex parte communication in his appellate brief.

The hearing board found that no ex parte communications between the judge and Zephyr's lawyer took place. Egbune's allegation was based solely on his assumption that because the amount claimed by Zephyr's lawyer had increased, an ex parte communication must have occurred.

The respondent's two successive motions for summary judgment were denied by the district judge. Early on in the case, Zephyr's lawyer offered a settlement whereby Fadeyi would not have to pay anything. The offer was rejected. In December 1996, the parties met with a mediator pursuant to a court order. At the mediation, Egbune of-fered to settle the case for $250,000 plus $6,000 attorney fees and the $1,000 that had been garnished. He demanded interest at the rate of 45%.

The case went to trial on December 16, 1996. Fadeyi's counterclaims were dismissed with prejudice because of Egbune's failure to establish a prima facie case. Judgment was entered in favor of Zephyr against Flavorz and Fadeyi in the amount of $6,307.09, plus attorney fees of over $30,000, costs and interest. The total award against the respondent's client was $42,259.91, which judgment has not been satisfied.

The board found that the respondent failed to competently represent his client in this case, contrary to Colo. RPC 1.1, by failing to follow the proper procedure to transfer the case to district court, failing to adequately investigate the counterclaims he asserted, and filing repetitive motions. The board also concluded that Egbune had engaged in conduct prejudicial to the administration of justice in violation of Colo. RPC 8.4(d).

However, the hearing board determined that Egbune did not file frivolous motions, Colo. RPC 3.1; fail to communicate with his client, Colo. RPC 1.4(a); or file written motions in the county court without first obtaining that court's approval as required by C.R.C.P. 307(b), Colo. RPC 3.4(c).

The formal complaint also alleged in Count II that Egbune had violated Colo. RPC 4.5 by threatening to file a grievance against Zephyr's lawyer in his October 17 letter. The board found that there was no clear and convincing evidence presented to them that the respondent's purpose in threatening to file the grievance was to gain an advantage in the case. As the board noted, Colo. RPC 4.5(b) now provides that "[i]t shall not be a violation of Rule 4.5 for a lawyer to notify another person in a civil matter that the lawyer reasonably believes that the other's conduct may violate criminal, administrative or disciplinary rules or statutes."

The hearing board therefore recommended that the charges that Egbune had violated Colo. RPC 1.4(a), 3.1, 3.4(c), and 4.5 be dismissed; and the complainant has not objected. The hearing board did find that the

respondent violated Colo. RPC 3.3 when he alleged that ex parte contacts had occurred between the district judge and the lawyer for the other side. Rule 3.3(a)(1) provides that "[a] lawyer shall not knowingly: ... (1) make a false statement of material fact or law to a tribunal."

■ Egbune's charges were pure speculation and not based on any evidence. The board concluded that Egbune made these allegations recklessly, and that a mental state of recklessness would suffice for a violation of Rule 3.3. We agree. "With one important exception [involving knowing misappropriation of property], we have considered a reckless state of mind, constituting scienter, as equivalent to 'knowing' for disciplinary purposes." *People v. Small,* 962 P.2d 258, 260 (Colo.1998) (holding that lawyer's mental state when he gave false testimony at trial went beyond negligence and was equivalent to knowing for disciplinary purposes).

## C. Count III

Egbune represented Montech Systems in an action brought by Montech in Arapahoe County District Court. On November 16, 1994, the district judge ordered the parties to submit a stipulated status report. The order was sent to the respondent and required him to provide a copy to all of the parties of record within five days and to file a certificate that he had complied with the order. When the order was received at Egbune's office, he was on vacation and he had not assigned anyone to cover his duties while he was gone. As a result, he did not actually see the order until he returned on November 30, 1994, and he then contacted opposing counsel.

On August 15, 1995, the district court judge referred the Montech case to alternative dispute resolution (ADR). The defendants' lawyer filed a motion for enlargement of time on August 30, asserting that Egbune had refused to participate in further discovery because of the ADR order. Two weeks later, the lawyer filed a motion asking the court to vacate its ADR order and to impose sanctions against the respondent because of his failure to provide discovery or to discuss the ADR plan. Finally, on September 22 the lawyer filed an "emergency" motion to compel discovery and impose sanctions. The district court granted the motion that same day. The defendants were told to file a record of the attorney fees and costs they incurred because of the plaintiff's and the third-party defendant's failure to provide discovery, both of whom were represented by the respondent. The court ordered Egbune to pay that amount. On October 6 Egbune filed an "emergency" motion for the court to reconsider its award of attorney fees. Among other things, Egbune asserted that he was not a party to the action.

The hearing board found that the respondent's failure to comply with the defendant's discovery requests violated Colo. RPC 3.4(d). In addition, his failure to have anyone to cover for him while he was on vacation and the court's order was received, constituted conduct prejudicial to the administration of justice, violating Colo. RPC 8.4(d).

However, the hearing board declined to find that Egbune knowingly disobeyed an obligation under the rules of tribunal. *See* Colo. RPC 3.4(c). Nor had it been proven by clear and convincing evidence that the respondent's argument, that he could not be personally sanctioned because he was not a party, was frivolous. *See* Colo. RPC 3.1. Moreover, the board concluded that Egbune had not failed to provide competent representation to his client, *see* Colo. RPC 1.1, and that he had made a false statement of material fact in violation of Rule 3.3. The complainant has not excepted to the board's recommendation that these last four charges be dismissed.

## II. No. 98SA206

The second hearing board found that the incidents described below were proven by clear and convincing evidence.

## A. The Guardian Ad Litem

On April 30, 1997, a woman retained Egbune to represent her in a child custody matter. Two weeks earlier, the client's former husband had filed a motion in district court seeking sole custody of their daughter. He alleged that the child had been abused by

the client's boyfriend and was living in an unsafe environment. A status conference had been set for April 29, but the respondent's prospective client mistakenly believed that her appearance was not required. She failed to appear at the status conference because of a conflict with her work schedule. The following day, the court entered an order granting an emergency change of custody to the father and appointing a guardian ad litem for the child. The parties were ordered to pay the GAL a retainer within ten days of the order. Egbune's client was ordered to pay $175 and her ex-husband was ordered to pay $350.

Egbune was hired on April 30, the day the orders were issued, to represent the woman in the custody dispute for a flat fee of $1,000. She paid him $300 initially and another $100 a few days later. On May 1, 1997, the respondent filed a motion for a forthwith hearing, alleging that the former husband's affidavit in support of a change in custody was false and that a change of custody was not in the best interests of the child. The motion was denied. Egbune then filed a motion to reconsider and another motion for a forthwith hearing. The motions were scheduled to be heard on May 22.

Egbune obtained a copy of the court's order appointing the GAL. At this time, his client had the funds to pay the $175 fee, but Egbune told her that guardians were frequently not paid in advance despite court orders to the contrary. The respondent specifically instructed his client not to pay the $175 that was supposed to be paid to the GAL within ten days from the April 30 order until after the May 22 hearing.

Upon learning at the hearing that neither of the parties had paid the GAL as ordered, the district judge advised the parties that if they did not pay the retainer within ten days he would hold them in contempt. The judge refused to hold the hearing because he wanted the GAL to be involved.

The respondent's client angrily confronted him immediately after the hearing about his advice to not pay the GAL's fee. She fired him the same day. Also on the same day, Egbune paid the GAL's fee from the funds that the client had paid him to represent her.

After a request for investigation was filed with the Office of Disciplinary Counsel, he refunded the money his client had paid him less the GAL's fee. The hearing board concluded that by advising her not to pay the GAL the retainer that the court had ordered, the respondent failed to provide competent representation to his client in violation of Colo. RPC 1.1.

### B. The Sexual Advances

At his first meeting with his client regarding the custody of her young child, Egbune talked extensively about himself, his personal life, and his perception that women are attracted to him. He also told her at one point that he thought he had seen her before – in his dreams.

On May 17, 1997, the client met the respondent in his office to prepare for the hearing. He sat next to her on a loveseat and indicated that he would like to do more for her, all the while making motions with his hands towards her midsection. He moved closer, put his arm around her, and started to rub her leg. He also tried to kiss his client. She reminded him that he was married and that he was her lawyer, but he persisted in trying to kiss her and he rubbed her back. As his client continued to object, Egbune pulled away and asked her, apparently jokingly, for the $100 she owed him. The client paid him the money and asked for a receipt. When he returned with a receipt, he put his hands on his client's buttocks and tried to force his tongue into her mouth. He forcibly drew her towards his lower body and she could feel his erect penis against her. When she moved away from him and gathered her belongings to leave, he took them away from her and forcibly pulled her against him again. Egbune put his hands inside his client's pants, on her buttocks, and moved his hands up under the back of her shirt. She again objected to Egbune's advances, gathered her belongings and left his office. He followed her out, embraced and kissed her, and told her, "You belong to me."

After this encounter, the client confided in a fellow dance troupe member and co-worker what had just happened at the respondent's

office. Because she did not want to be the object of Egbune's advances again, the next time she went to his office she brought a male friend. When she went to court on May 22, she brought the co-worker she had confided in with her. In the co-worker's presence, the respondent told his client that she looked beautiful as he stroked her arm.

At the hearing, the respondent denied his former client's version of the events. Resolving the issue of credibility against the respondent and in favor of the client, the hearing board found that the respondent's unwanted sexual advances constituted the commission of a criminal act that reflected adversely on Egbune's fitness to practice law in violation of Colo. RPC 8.4(b). Specifically, the board found that Egbune's conduct violated the third-degree sexual assault statute, section 18–3–404. That section provides in part that "[a]ny actor who knowingly subjects a victim to any sexual contact commits sexual assault in the third degree if: (a) The actor knows that the victim does not consent." § 18–3–404(1)(a), 5 C.R.S. (1998).

"Sexual contact" means the knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim's or actor's intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

§ 18–3–401(4), 5 C.R.S. (1998). " 'Intimate parts' means the external genitalia or the perineum or the anus *or the buttocks* or the pubes or the breast of any person." § 18–3–401(2), 5 C.R.S. (1998) (emphasis added). The board properly found that Egbune's conduct violated the third-degree sexual assault statute, and thus Colo. RPC 8.4(b).

### III.

In No. 98SA120, the hearing panel modified the hearing board's recommendation of a ninety-day suspension plus monitoring conditions to a thirty-day suspension with the same conditions. The complainant excepted to the panel's recommendation as too lenient and the respondent filed exceptions requesting that no further action be taken against him.

In No. 98SA206, the hearing panel accepted the hearing board's findings and recommendation that the respondent be suspended from the practice of law for one year and one day. Only the respondent excepted to the panel's action in the second case, raising certain constitutional objections and asking that the proceeding be dismissed. We address the respondent's exceptions in No. 98SA120 first.

### A.

■ There are really two bases of Egbune's exception to the board's findings and recommendation. The first is in effect a reargument of the facts of the case. The respondent has not filed a transcript of the hearing, and the board's factual findings are supported by the record we do have. We therefore will not overturn the findings. *See People v. Reynolds,* 933 P.2d 1295, 1303 (Colo.1997).

Egbune's second contention is that for the court to place any restrictions or conditions on his right to practice law would offend fairness and equal protection of the law. His brief does not state any legal reason, or any reason at all, why this is so. We therefore reject the respondent's exceptions in No. 98SA120.

### B.

The global issue presented by the respondent in his opening brief in No. 98SA206 is, "Whether the principle of fundamental fairness, due process of law and equal protection under the law was violated in this case, such that no disciplinary action is warranted against the respondent, Patrick Anene Egbune."

■ Egbune's first contention concerns due process and his right to a fair and unbiased decisionmaker. He asserts that a member of the grievance committee sat on a hearing board in a previous disability proceeding involving him, and that this same member sat on the hearing board in this disciplinary proceeding. He also states that there were irregularities in a 1996 disciplinary case, where he was the respondent, re-

sulting in his filing an action in federal court, which was dismissed. He represents that the disability proceeding was then initiated against him. Egbune charges that it was improper for the member of the grievance committee to sit on the hearing board in the disciplinary case and the disability proceeding because he was a member of the grievance committee, and, as such, was not an independent adjudicator. The basis for the allegation is that the disability proceeding and subsequent disciplinary proceedings were in retaliation for his actions during the 1996 disciplinary matter, including the fact that he filed the action in federal court regarding it.

■ The respondent in a lawyer disciplinary proceeding is entitled to procedural due process, including the right to be heard by a neutral and detached decisionmaker. *See People v. Varallo*, 913 P.2d 1, 3–5 (Colo. 1996). In this case, however, the respondent has produced no evidence to support his allegation that a member of the grievance committee could not, or did not, serve as an impartial member of his hearing board in No. 98SA206. In fact, the rules in effect at the time of the respondent's hearing required that a member of the grievance committee, or a former member, serve on the hearing board. *See* C.R.C.P. 241.14(b). The only restriction is that a member of the inquiry panel that investigated or reviewed the respondent's case prior to the initiation of formal proceedings may not sit on either the hearing board, or the hearing panel that reviews the board's findings. *See* C.R.C.P. 241.2(c). The grievance committee member who served on Egbune's hearing board in No. 98SA206 was not a member of the inquiry panel in his case.

The respondent's reply brief suggests that he has confused the entire grievance committee, which at the time of the proceedings here was comprised of three separate panels, with the specific inquiry panel that investigated his case. *See* C.R.C.P. 241.2(c).

Each panel may act as both an inquiry panel and a hearing panel, as described in these Rules. However, no panel shall act as both the inquiry panel and the hearing panel on the same matter. All matters referred to one panel for inquiry, if subsequently referred for hearing, must be heard by the other panel or a board thereof.

Members of one panel may be reassigned by the Chairman to the other panel. However, with the exception of the Chairman, no member of the Committee who participated on the inquiry panel may participate as a member of the hearing panel on the same matter.

*Id.* The record indicates that the member who served on the respondent's hearing board did not serve on the inquiry panel that investigated him. Nor was it improper for the member to sit on the hearing panel that reviewed the findings of the hearing board. *See People v. Fitzgibbons*, 909 P.2d 1098, 1101 (Colo.1996). As in *Fitzgibbons*, the respondent has not demonstrated that any member of the hearing board in his case was personally biased against him. *See id.* at 1101–02.

■ Egbune's remaining challenges can be summarized as follows. Before it can be found that he had committed a criminal act by violating the third-degree sexual assault statute, the respondent asserts he has the right to be tried by a jury and the proof must be beyond a reasonable doubt. This is incorrect. "A lawyer discipline proceeding is not a criminal proceeding...." *People v. Marmon*, 903 P.2d 651, 652 (Colo.1995). There is therefore no Sixth Amendment right to be tried by a jury. *See People v. Smith*, 937 P.2d 724, 727 (Colo.1997). The standard of proof in such a proceeding is by clear and convincing evidence, not beyond a reasonable doubt. *See People v. Distel*, 759 P.2d 654, 661 (Colo.1988). Moreover, grounds of lawyer discipline include:

Any act or omission which violates the criminal laws of this state or of the United States; *provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings,* and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action....

C.R.C.P. 241.6(5) (emphasis added); *see also People v. Morley,* 725 P.2d 510, 514 (Colo. 1986) (conviction of criminal offense is not a

condition precedent to attorney disciplinary proceedings involving the offense, nor is acquittal a bar).

Egbune also contends that there was a conspiracy against him, consisting of the grievance committee, the assistant disciplinary counsel and other members of the Office of Disciplinary Counsel, certain private lawyers, the police, an investigative reporter for a television station, as well as the victim in the case, his former client. Egbune raised this at the hearing. He also asserts that the hearing board should not have believed his client's testimony because she was not credible. According to Egbune, the board should have believed his version of the events in which it was the client who was the sexual predator, not him.

The hearing board resolved the credibility issue against Egbune and in favor of his client and the other witnesses against him. The hearing board also rejected his conspiracy allegations, both explicitly and implicitly. The board's findings are supported by the record and we accept them. *See Reynolds*, 933 P.2d at 1303. The respondent's exceptions in No. 98SA206 are overruled.

### C.

The third-degree sexual assault is the most serious misconduct in these cases. Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.12.

In addition, Egbune's charges that an opposing lawyer and a judge engaged in an improper communication were done recklessly, not merely negligently, which for our purposes is equivalent to knowingly. *See People v. Small*, 962 P.2d 258, 259–60 (Colo. 1998). A short period of suspension is appropriate for such conduct.

Suspension is generally appropriate when a lawyer knows that false state-ments or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding. ABA *Standards* at 6.12; *see also People v. North*, 964 P.2d 510, 511–12 (Colo.1998).

Each hearing board found somewhat differing aggravating and mitigating factors. The hearing board in 98SA120 found the following factors in aggravation: the presence of a pattern of misconduct, *see id.* at 9.22(c); multiple offenses, *see id.* at 9.22(d); and indifference to making restitution, *see id.* at 9.22(j). In mitigation, the board found that the respondent has not been previously disciplined, *see id.* at 9.32(a); was suffering from personal and emotional problems, *see id.* at 9.32(c); and displayed a cooperative attitude toward the proceedings, *see id.* at 9.32(e). The board also found the presence of a physical or mental disability or impairment, in the nature of a diagnosed bipolar disorder, as a mitigating factor, citing ABA *Standards* 9.32(h). This standard was amended in 1992, however, to delete the reference to "mental disability." ABA *Standards* 9.32(i) (Supp.1992) refers to mental disability, but its use as a mitigating factor has been confined to those situations where it is shown by medical evidence that the lawyer is affected by the disability; that the mental disability caused the misconduct; that the lawyer's recovery from the mental disorder is demonstrated by a meaningful period of successful rehabilitation; and that the recovery arrested the misconduct and its recurrence is unlikely. *See id.* at 9.32(i)(1)-(4). The hearing board did not consider any of these qualifying factors, so we do not consider the respondent's bipolar disorder to be a mitigating factor.

In 98SA206, the board found that the respondent exhibited a selfish motive in the sexual assault of his client, *see id.* at 9.22(b); the respondent submitted false statements during the disciplinary proceeding, *see id.* at 9.22(f); and the child custody client was a vulnerable victim, *see id.* at 9.22(h). The mitigating factors included the absence of a

prior disciplinary record, *see id.* at 9.32(a); and that Egbune made a timely good faith effort to make restitution when he paid the GAL and refunded the balance of his fee to his client, *see id.* at 9.32(d).

Of these factors, we consider the absence of prior discipline to be the most important mitigating factor, and his submission of false statements to the hearing board to be the most serious aggravator.

We suspended the lawyer in *People v. Martin*, 897 P.2d 802 (Colo.1995) for a year and a day following his conviction for the third-degree sexual assault of a client. *See id.* at 804. The fact that Egbune has not been charged or convicted of the offense is not important for discipline purposes. *See People v. Musick*, 960 P.2d 89, 92 (Colo.1998).

Similarly, the respondent in *People v. Brailsford*, 933 P.2d 592 (Colo.1997) was suspended for a year and a day. Brailsford pleaded guilty to the third-degree sexual assault of his wife pursuant to a plea agreement, but his conduct involved forcible penetration and was more serious than the sexual misconduct in this case. *See id.* at 595. On the other hand, Egbune committed other professional misconduct as well as the assault on his client.

Finally, we suspended the lawyer in *People v. Lowery*, 894 P.2d 758 (Colo.1995), for a year and a day. Lowery engaged in a pattern of sexual harassment and misconduct with three female employees of his law firm. *See id.* at 759–60. The most serious sexual misconduct in *Lowery* was similar to that here, although it was not charged as a criminal offense. *See id.* at 759 n. 1.

 When we consider the seriousness of the misconduct in both these proceedings, and the aggravating and mitigating factors, we conclude that a suspension for a year and a day, which carries with it the requirement that Egbune petition for reinstatement, is appropriate. Since he will be suspended for this period, and not a shorter one, we elect not to make the monitoring conditions included in the recommendation in No. 98SA120 mandatory at this time. When the respondent petitions for reinstatement, however, if the hearing board finds it appropriate, it may condition the respondent's reinstatement on his compliance with the monitoring of his practice.

### IV.

It is hereby ordered that Patrick Anene Egbune be suspended from the practice of law for one year and one day, effective thirty days after the issuance of this opinion. Egbune is further ordered to pay the combined costs of these proceedings in the amount of $2,899.01 within ninety days after this opinion is announced to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432. Egbune shall not be reinstated until after he has complied with C.R.C.P. 251.29.

Justice SCOTT does not participate.