**The PEOPLE of the State of Colorado, Complainant,**

v.

**Doug VINCENT, Respondent.**

**No. GC 97A–113.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Feb. 18, 1999.

**FINDING OF FACTS, CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION**

This matter was heard on January 12, 1999, before the Presiding Disciplinary Judge and two hearing board members, J.D. Snodgrass and Donald W. Alperstein, both members of the Bar. Kenneth B. Pennywell, Assistant Regulation Counsel [1] represented the People ("complainant") and Michael G. Cooksey represented Douglass Forgan Vincent ("Vincent").

### I. CHARGES

Complainant charged and Vincent stipulated that Vincent's actions constitute violations of The Colorado Rules of Professional Conduct ("Colo.RPC") 1.15(a)(commingling of funds); Colo. RPC 1.15(b)(failure to promptly pay bills of vendors); Colo. RPC 8.4(a)(violating a rule of professional conduct), and Colo. RPC 8.4(d)(engaging in conduct that is prejudicial to the administration of justice).[2] Complainant also charged Vincent under Colo. RPC 8.4(c)(engaging in conduct involving dishonesty).

### II. FINDINGS OF FACT

The hearing board members heard testimony from the complainant's witnesses Glen Coury ("Coury"), Jayme J. Schmidt by video deposition, Deborah L. Ortiz and Vincent. The hearing board members heard testimony from Vincent's witnesses, Greg Barton and Vincent. The complainant's Exhibits 1 through 11 and Exhibit 14 were admitted into evidence. Vincent's Exhibits A through H were admitted into evidence. The parties' Stipulation and Stipulation of Facts, both filed January 11, 1999, were accepted. The hearing board considered the testimony and exhibits admitted, the Stipulation and Stipulation of Facts tendered, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence:

Vincent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 17, 1980, and is currently registered as an attorney upon the official records of this court, registration number 10740.

On or about November 20, 1989, Coury hired Vincent to represent Coury's company in a breach of contract suit against another company and an officer of that company who resided in Taipei, Taiwan. Vincent, a patent attorney, had no prior experience handling litigation matters, crafting contingent fee agreements, or receiving client funds designated for paying costs. Vincent's prior nine

---

1. On January 1, 1999 the title of the Disciplinary Counsel became Regulation Counsel.

2. Although the Assistant Regulation Counsel and counsel for Vincent stipulated that a violation of Colo. RPC 8.4(d) arose from the stipulated facts, the hearing board found no facts which would support a finding of violation of Colo. RPC 8.4(d) and did not take the stipulated violation into account in determining the sanction to be imposed.

years of experience was limited to intellectual property matters involving flat fees from which the lawyer was solely responsible for costs incurred in the legal representation.

Notwithstanding his lack of knowledge and inexperience with contingent fee arrangements, Vincent entered into an oral contingent fee agreement with Coury whereby Vincent was to receive one-third of any amounts collected in the litigation, with Coury paying the costs. Because the details of the fee agreement were not reduced to writing by Vincent or fully explained to Coury, Vincent and Coury held different understandings of how payment of costs would be handled.[3]

Coury made one payment to Vincent in 1989 [4] that Vincent in turn paid out to satisfy obligations Vincent had incurred in the prosecution of Coury's case. In 1990 and 1991 Vincent made additional requests for funds from Coury related to specific expenditures incurred on Coury's behalf in the litigation, and received and deposited those funds [5]. Less than all payments made by Coury were deposited into Vincent's Colorado Trust Account Foundation ("COLTAF") account. Although the precise use of the funds requested for costs had not been discussed between Coury and Vincent, Coury reasonably assumed that the funds requested would in fact be used to pay the third-party vendors or to reimburse Vincent for payments advanced by him. Coury's understanding was reinforced by documents he received from Vincent on at least three occasions indicating that portions of the third-party vendor bills had been satisfied.

Vincent, however, did not utilize all of the funds provided to him to pay third-party vendors who had supplied the specified services. Rather, Vincent gave credit on his internal accounts to Coury for the amounts paid, considered the third-party vendor charges to be his sole responsibility, and withdrew the funds traceable to the Coury payments and spent those funds for goods and services unrelated to the Coury matter.

Vincent believed the funds provided to him by Coury to be his funds and treated them as such, but never told Coury how the funds were actually being handled.

In February 1993 Coury's wife paid Vincent $400.00 designated for an asset search to be performed by a third party vendor. Those funds were deposited by Vincent into his COLTAF trust account but not used to pay for the asset search. In July 1993 Vincent received $757.54 from Coury for payment of two specific third party vendor charges. Vincent deposited $500.00 of the $757.54 into his COLTAF trust account but took $257.54 in cash as a "cash back" and expended it for personal and/or business purposes unrelated to the Coury matter. The $500.00 which was deposited into his account was not used as Coury had intended to pay the vendors.

In 1997, nearly four years after Coury had provided funds to Vincent to pay the third-party vendors, one of those vendors, C.D. Beck and Associates, contacted Vincent and discussed with him the outstanding indebtedness. During that conversation, Vincent told the vendor that he believed the indebtedness had been discharged in Vincent's personal bankruptcy and agreed to provide bankruptcy records verifying this discharge to the vendor. Vincent's discharge in bankruptcy was dated June 17, 1992. Vincent retained C.D. Beck and Associates to do investigative work on or about April 8, 1993. Vincent knew or should have known at the time that representation was made that the bankruptcy predated the indebtedness and thus, the indebtedness was not discharged. Vincent did not send the bankruptcy records to the vendor as he promised.

In or about January 1997, Coury learned that Vincent had not paid at least two of the three vendors for which Coury previously paid funds to Vincent, and subsequently filed a Request for Investigation with the Disciplinary Counsel. Several months after the

---

**3.** The attorney/client relationship at issue in this matter predates the adoption of C.R.C.P. ch. 23.3, the Rules Governing Contingent Fees.

**4.** $500.00 for costs of filing and service on December 8, 1989.

**5.** $400.00 for service of process on August 8, 1990; $300.00 for service of process on September 13, 1991.

Request for Investigation was filed and more than four years after the vendors had provided the services requested and submitted bills to Vincent, Vincent paid all of the outstanding third-party vendor charges. Coury suffered no financial harm as a result of Vincent's mishandling of the funds provided.

Vincent deposited both his personal and client funds into his COLTAF account and expended funds from that account for personal needs and routine office expenditures. Vincent made no effort to segregate client funds from either his personal funds or operating funds.[6]

## III. CONCLUSIONS OF LAW

Vincent is an attorney duly licensed to practice law in Colorado and is currently registered to do so. Vincent is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

Neither the Complaint nor the Amended Complaint in this action allege any violations of The Code of Professional Responsibility which governed attorney conduct prior to January 1, 1993. Accordingly, the hearing board only considered Vincent's conduct after January 1, 1993 in reaching its decisions on violations of The Rules of Professional Conduct. The pre–1993 conduct was taken into account as mitigation and/or aggravation in arriving at an appropriate sanction.

The funds provided to Vincent by Coury were for the payment of specific costs. Thus, there can be no doubt that those funds were client funds until such time as they were either used to pay the specific costs for which they were provided, used to reimburse Vincent for expenses actually advanced or used in an alternative manner authorized by Coury. Colo. RPC 1.15(a) and (b). Vincent's "assumption" that the funds somehow became his since he was responsible for the costs to third parties and gave his client internal credit for the payments, is neither reasonable nor supportable under Colorado law.

Colo. RPC 1.15(a) provides in relevant part:

> In connection with a representation, a lawyer shall hold property of clients or third persons that is in a lawyer's possession separate from the lawyer's own property. Funds shall be kept in a separate account
>
> . . .

Vincent failed to maintain Coury's property separate from his own, exposed his client to potential harm by such failure, and misled Coury into believing that the funds had been used for the intended purpose. Vincent's conduct constitutes a clear violation of Colo. RPC 1.15(a).

Between December 1989 and July 1993 Coury gave Vincent a total of $2,357.54 to pay third-party vendors for services they provided in connection with his suit. On several occasions Coury's check reflected the purpose of the payment. Prior to Vincent learning in 1997 that a Request for Investigation had been filed, he had paid only $1,365.24 to third-party vendors.

Colo. RPC 1.15(b) requires, in part:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client, deliver to the client or third person any funds or other property that the client or third person is entitled to receive . . .

Although Vincent paid portions of the bills of one of the three vendors, he did not pay any portion of the other two vendors' bills for nearly four years despite having received funds from Coury for that purpose. Vincent did not fully pay the vendors' bills until after he was aware that a Request for Investigation had been filed against him. Vincent's failure to promptly pay the vendors' bills is directly related to and a consequence of his failure to comply with the mandatory provisions of Colo. RPC 1.15(a) and constitutes the additional violation of Colo. RPC 1.15(b). Vincent's conduct also is a violation of Colo. RPC 8.4(a). Vincent acknowledged by way

---

**6.** Vincent's COLTAF account activity includes a deposit of his roommate's portion of the monthly tenant rent payment and withdrawal of funds to purchase a filing cabinet for his office. *See* Respondent's Exhibits A & B.

of stipulation that his conduct violated Colo. RPC 8.4(a) (violating a rule of professional conduct) and our findings and analysis set forth above support that stipulation. The requirements of proving a charge under Colo. RPC 8.4(c) (engaging "in conduct involving dishonesty, fraud, deceit or misrepresentation") have also been satisfied by clear and convincing evidence.

Vincent deceived his client into believing that the funds paid for satisfaction of costs were used to satisfy incurred costs when, in fact, they were not. Vincent failed to fully explain the workings of the contingent fee agreement to his client, and failed to explain his handling of Coury's funds, leaving Coury with the impression that the monies had been properly applied. Vincent misappropriated the funds provided to him by Coury and deceptively concealed that fact. Moreover, Vincent misled at least one vendor by first telling them their bill had been discharged in bankruptcy, agreeing to provide supporting bankruptcy documentation, and then failing to do so. *See In the Matter of Patrick Anene Egbune,* 971 P.2d 1065, 1069 (Colo. 1999) (holding "[w]ith one important exception [involving knowing misappropriation of property], we have considered a reckless state of mind, constituting scienter, as equivalent to "knowing" for disciplinary purposes" *citing People v. Small,* 962 P.2d 258, 260 (Colo.1998)); *People v. Rader,* 822 P.2d 950, 953 (Colo.1992)(holding that an attorney's conduct can be so careless or reckless that it must be deemed to be knowing and will constitute a violation of a specific disciplinary rule).

### IV. SANCTIONS/IMPOSITION OF DISCIPLINE

█ This disciplinary case arises from Vincent's commingling of client funds with personal and operating funds, his failure to promptly pay the bills of vendors, and his engaging in conduct involving dishonesty and deceit. Although the conduct established at the trial constitutes violations of four separate rules, each of which would justify the imposition of sanctions, under the circumstances of this case, the hearing board finds that Vincent's actions constitute a continuing course of the same conduct and, therefore, warrant the imposition of a single sanction.

Complainant forcefully argued that disbarment was the required sanction under the circumstances presented. Complainant asserted that we should find that the standard set out in *People v. Varallo,* 913 P.2d 1, 11 (Colo.1996) applies. *Varallo* states in relevant part:

> Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *id.* at 11. (citations omitted).

Counsel for Vincent persuasively argued that Vincent's misappropriation does not meet the test for disbarment but rather only rises to the level of conduct for which suspension is the suggested sanction. Vincent asserts that the following standard, also found in *Varallo* applies:

> A "technical conversion," usually warranting suspension rather than disbarment, is a conversion or misappropriation where the complainant either concedes that the misappropriation was negligent, *People v. Dickinson,* 903 P.2d 1132, 1138 (Colo.1995), or it cannot be proven by clear and convincing evidence that the respondent knowingly converted the funds, *People v. Galindo,* 884 P.2d 1109, 1112 (Colo.1994). 913 P.2d at 11.

█ The lawyer's state of mind is a decisive element in deciding between knowing misappropriation and a technical conversion. *Id.* Vincent admitted that he withdrew the funds which had been paid to him by his client and designated for vendor costs, but convincingly testified that, consistent with his lengthy experience with fixed fee arrangements, it was his understanding that the funds were his, not his client's. Although Vincent knowingly used the funds paid by his client for purposes other than the client intended and without his client's authorization, the evidence is not clear and convincing that Vincent knew or understood that the funds belonged to his client. On the contrary, Vincent, as the result of his lack of prior experi-

ence with contingency fee agreements and trust account management, misunderstood the import of the facts, believed the funds belonged to him and handled them accordingly.

In light of the fact that the conduct at issue in this matter predates the issuance of *People v. Gilbert,* 921 P.2d 48, 50 (Colo.1996) in which the supreme court made it clear that flat fees were to be placed in trust accounts, Vincent's lack of understanding must be considered in determining the appropriate sanction to impose. *See In re Gallo,* 117 N.J. 365, 568 A.2d 522, 526 (1989).

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) 4.12 ("ABA Standards") provide that suspension is generally the appropriate sanction when a lawyer should have known that he is dealing improperly with client property and causes potential injury to his client. Vincent does not and could not deny that he should have known the funds paid for costs by his client were the property of his client subject to the safeguarding requirements of Colo. RPC 1.15(a) and (b).

Vincent has had no prior discipline, was cooperative in the investigation and prosecution of this matter, had no prior experience handling client funds designated for cost expenditures and expressed remorse for his conduct. His conduct, however, reflects a selfish motive, involves both multiple offenses and a pattern of misconduct, arose after he had been licensed to practice law for over nine years, and would have been avoided in its entirety had Vincent merely informed himself of the requirements of the rules applicable to all lawyers in the handling of client funds. *See* ABA Standards, 9.22 and 9.32. On balance, the aggravating factors substantially outweigh the mitigating factors and justify a lengthy period of suspension.

## V. ORDER

IT IS THEREFORE ORDERED, Doug Vincent is suspended from the practice of law for a period of two years commencing thirty-one days from the issuance of this Order. *See* C.R.C.P. 251.28(a). Upon submission of a certificate of compliance to the Regulation Counsel of completion of thirty-five hours of attendance at Continuing Legal Education programs (twenty hours of which shall be focused upon COLTAF accounting requirements, segregation of client funds and the Rules of Professional Conduct) and proof of successful completion of the multi-state professional responsibility examination, one year and three months of the period of suspension shall be stayed and Vincent shall be placed under probation for a one year and three month period as authorized by C.R.C.P. 251.7. The following terms and conditions of probation shall be imposed:

1. Vincent shall attend the one day Ethics program sponsored by the Colorado Lawyer's Health Program during the period of his suspension;

2. Vincent shall secure the services of an attorney licensed to practice law in Colorado having more than five years experience, at his own expense, to act as a monitor to review Vincent's handling of client funds and to pre-approve each and every deposit and withdrawal of funds to and from Vincent's COLTAF account. Reports reflecting such review and pre-approval shall be filed with the Regulation Counsel once every month during the period of probation;

3. Vincent shall pay all costs and expenses, including administrative expenses, associated with such period of probation, within thirty days of billing and

4. Vincent shall have no further violations of the Rules of Professional Conduct during the period of probation.

Should Vincent seek reinstatement to practice law under the terms and conditions of probation set forth above, he is required to petition for such reinstatement as set forth in C.R.C.P. 251.29.

Regulation Counsel is Ordered to submit an itemization of costs and expenses incurred in the investigation and prosecution of this action within ten days of this Order. Vincent shall have five days from the service of such itemization upon him to submit any objection thereto. The court will review the itemization and any objection thereto and enter an Order adopting the costs and expenses of the action. Vincent is Ordered to pay the costs and expenses of the investigation and prose-

cution of this action within sixty days of the entry of an Order adopting the itemization.